DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant/Cross-Appellee John Kallergis appeals from a jury verdict in the Summit County Court of Common Pleas. Appellees/Cross-Appellants Quality Mold, Inc. ("Quality Mold") and Steve Zoumberakis cross-appeal from a post-verdict ruling made by the trial court. We affirm.
 I {¶ 2} In 1978, John Kallergis, Steve Zoumberakis, Greg Kalikas, and Michael Politis founded Quality Mold. Over the next few years, these four shareholders welcomed new shareholders Robert Gruber, John Montgomery, and Mark Slanta to the business, and Quality Mold flourished until the late nineties. *Page 2 
 {¶ 3} In 1994, Kallergis, Zoumberakis, Kalikas, Politis, and Gruber entered into stock purchase agreements with Montgomery and Slanta. The five shareholders cosigned the agreements and personally guaranteed payment to Montgomery and Slanta. By 1998, however, the five shareholders were no longer interested in sharing the business. Ultimately, Kallergis, Kalikas, and Gruber each agreed to sell their individual shares for approximately $4 million. The stock redemption agreement specified that each of the three men would receive a lump payment equal to 75% of the purchase price, monthly installment payments of $8,333.33 for five years, and a final balloon payment of $783,470.87 in August 2003. The agreement further provided that the selling shareholders' shares would be held in escrow until they received full payment.
 {¶ 4} Amidst falling sales and mounting debt in 2002, Zoumberakis decided to negotiate a different buyout with Kallergis, Kalikas, and Gruber. Zoumberakis secured a Key Bank loan for $1,605,000 and retained Attorney John Krajewski to conduct the negotiations. Krajewski met with Kallergis, Kalikas, and Gruber in April 2002 and told them that Quality Mold could only afford to pay 25% of the original $783,470 balloon payment ($202,600) that each of them expected to receive in August. After the meeting, Kallergis, Kalikas, and Gruber retained their own lawyer and eventually signed an Acceleration and Reduction Agreement. The Agreement specified that all three men would receive the reduced balloon payment immediately. Additionally, the Agreement relieved *Page 3 
Kallergis, Kalikas, and Gruber of their personal guarantees to make payment to Montgomery and Slanta. In addition to his own Agreement, Kallergis signed separate Acceleration and Reduction Agreements for Montgomery and Slanta. Those Agreements specified that Montgomery and Slanta would receive 80% and 60% respectively of their outstanding final payments pursuant to the 1994 stock purchase agreements.
 {¶ 5} On November 11, 2003, Kallergis brought suit against Quality Mold, Zoumberakis, and Politis for accounting, fraud in the inducement, and breach of fiduciary duty. Before trial, Kallergis voluntarily dismissed Politis from the action and dismissed his accounting claim.
 {¶ 6} On January 26, 2007, the jury found in favor of Quality Mold and Zoumberakis on both counts. As a result of the verdict, Quality Mold and Zoumberakis argued that the suit had been frivolous and sought to collect attorney's fees from Kallergis pursuant to R.C. 2323.51. The trial court denied the motion for attorney's fees without holding a hearing.
 {¶ 7} Kallergis timely appealed from the jury's verdict, raising three assignments of error. Quality Mold and Zoumberakis cross-appealed, challenging the court's decision not to award fees and raising two cross-assignments of error. On June 11, 2007, we granted Kallergis' motion to consolidate the two appeals.
 II *Page 4 Assignment of Error Number One "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A NEW TRIAL WHERE APPELLANT WAS PREJUDICED BY THE TRIAL COURT'S FAILURE TO SUBMIT THE STIPULATED JURY INTERROGATORIES TO THE JURY."
 {¶ 8} During trial, Kallergis argued that Zoumberakis by and through his agent, Attorney Krajewski, made factual misrepresentations by telling Kallergis: (1) that Quality Mold only could pay 25% of the originally agreed upon buy out price when it allegedly could have paid more, and (2) that all of the shareholders would be treated equally when in fact Montgomery and Slanta received well over 25%. After some discussion, both trial counsels agreed that the court would not give an agency instruction, but that the jury would receive interrogatories containing agency language. For instance, interrogatory number one provided: "Do you find by a preponderance of the evidence that the Defendants, by or though their agents, made any material false representation(s) to John Kallergis?" After the jury returned their verdict, however, the court discovered that the jurors never received the interrogatories. Accordingly, the court gave the jurors the interrogatories and sent them back to the jury room. A short while later, the jury returned with the same verdict and completed interrogatories consistent with that verdict.
 {¶ 9} Kallergis made a motion for a new trial arguing prejudice as a result of the procedural error. The trial court denied the motion and entered judgment on *Page 5 
the jury verdict. Kallergis now argues that the court improperly denied his motion for a new trial based on the irregularity of the proceedings below. We disagree.
 {¶ 10} Civ.R. 59(A)(1) allows a trial court to grant a new trial based on "[i]rregularity of the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial[.]" An appellate court will not disturb a decision to deny a motion for a new trial absent an abuse of discretion. Bradley v.Cage (Feb. 27, 2002), 9th Dist. No. 20713, at *3. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} Initially, we note that the issue of agency was not properly before the trial court below. Civ.R. 9(B) requires certain matters to be pled with particularity. The circumstances constituting fraud are to be stated with particularity and generally include the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence. F J Roofing Co.v. McGinley Sons, Inc. (1987), 35 Ohio App.3d 16, 17; Civ.R. 9(B). To comport with Civ.R. 9(B), the complaint or counterclaim must have "sufficiently apprised" the defendant "of the specific claims to be required to answer." Haddon View Investment Co. v. Coopers Lybrand (1982), 70 Ohio St.2d 154, 159. Kallergis' complaint only named *Page 6 
Quality Mold, Zoumberakis, and Politis as defendants and repeatedly charged that "the Defendants" had made fraudulent misrepresentations. The complaint made no mention of Krajewski or any theory of agency. Additionally, Kallergis never sought to amend his complaint to correct this deficiency. See Civ.R. 15. Therefore, Kallergis failed to comply with the requirements of Civ.R. 9(B) and the issue of agency should not have been considered by the trial court.
 {¶ 12} Even if we set aside the issue of defective pleading, however, we still must conclude that the trial court did not abuse its discretion in refusing to grant Kallergis a new trial. Kallergis argues that he should receive a new trial because the forgotten interrogatories were supposed to instruct the jury on the law of agency as well as to test the correctness of the verdict. Kallergis misconstrues the purpose of an interrogatory. "The purpose of using interrogatories is to test the general verdict." Colvin v. Abbey's Restaurant, Inc., 85 Ohio St.3d 535,538. Interrogatories "test the jury's thinking in resolving an ultimate issue so as not to conflict with its verdict." Riley v. Cincinnati
(1976), 46 Ohio St.2d 287, 298. It is the jury instructions, not the interrogatories, which clearly and concisely state "the principles of law necessary to enable the jury to accomplish the purpose desired."Cleveland Elec. Illuminating Co. v. Astorhurst Land Co. (1985),18 Ohio St.3d 268, 272. Accordingly, Kallergis was wrong to agree to depend upon the interrogatories to instruct the jury. The simple inclusion of the language "by or through their agents" in an interrogatory is not tantamount to an instruction on *Page 7 
agency. Even if the jurors had received the interrogatories prior to retiring to the jury room, they would have been without a definition of agency. Thus, Kallergis cannot demonstrate prejudice because the jury could have reached the same result even with the interrogatories. Kallergis' first assignment of error lacks merit.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN ADMITTING THE TRIAL TESTIMONY OF JOHN KRAJEWSKI, ESQ. WHERE HE AND APPELLEES' TRIAL COUNSEL ARE BOTH MEMBERS OF THE SAME LAW FIRM AND WHERE COUNSEL FOR APPELLEES' HAD PREVIOUSLY REPRESENTED THAT KRAJEWSKI WOULD NOT BE CALLED AS A WITNESS."
 {¶ 13} In his second assignment of error, Kallergis argues that the trial court abused its discretion by allowing Krajewski to testify as a witness for the defense. We disagree.
 {¶ 14} In reviewing a trial court's decision to allow testimony, this Court shall not overturn a decision absent a showing of an abuse of discretion. State v. Havens (Nov. 1, 2000), 9th Dist. No. 20020, at *2. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court.Blakemore, 5 Ohio St.3d at 219.
 {¶ 15} First, Kallergis argues that the Disciplinary Rules (which still applied at the time of this trial) barred Krajewski from testifying while defense counsel, a member of the same law firm as Krajewski, continued to represent Quality Mold and Zoumberakis. DR 5-102(A) provides as follows: *Page 8 
 "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious * * * a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial[.]"
Yet, the Ohio Supreme Court has recognized that DR 5-102(A) is a rule of ethics and "is not a flat prohibition against such testimony."Mentor Lagoons, Inc. v. Rubin (1987), 31 Ohio St.3d 256, 258. Although an attorney or a firm may be subject to disciplinary proceedings for a violation of this ethical rule, DR 5-102(A) does not render an attorney incompetent to testify as a witness. Id. at 258-59. The attorney's or firm's relationship with the client goes to the weight, not the competency, of the testimony. Id. at 259. So long as the attorney's testimony is otherwise admissible under the evidentiary rules, the trial court may exercise its discretion to permit the attorney to testify. See id. at 260.
 {¶ 16} Kallergis does not suggest that Krajewski's testimony was inadmissible pursuant to the evidentiary rules. His sole argument is that the Disciplinary Rules barred the testimony. However, the trial court had the discretion to allow Krajewski's testimony. See id. Our review of the record leads us to conclude that the trial court did not abuse its discretion in allowing the testimony. During the course of the trial, Kallergis repeatedly made reference to statements that Krajewski had made. It was not unreasonable or arbitrary to permit Krajewski to explain those statements. See Blakemore, 5 Ohio St.3d at 219. *Page 9 
 {¶ 17} Second, Kallergis argues that the trial court should not have allowed Krajewski to testify because a previous defense counsel allegedly promised not to call him as a witness. While we are unable to determine what type of agreement, if any, existed between counsels before trial, it was unreasonable for Kallergis' counsel to assume that Krajewski would not testify. Once trial began, it became clear that Krajewski was a material witness. Kallergis' entire argument was based on agency; that Quality Mold and Zoumberakis, through their agent
Krajewski, fraudulently induced Kallergis. Kallergis apparently thought that he would be able to attack all of Krajewski's statements while also preventing his testimony. Although it seems likely that defense counsel could have foreseen this issue, we also recognize that Kallergis did not plead agency in his complaint. Therefore, it is at least possible that defense counsel did not know how critical Krajewski was to Kallergis' argument until the trial commenced. Accordingly, we find that the trial court did not abuse its discretion when it permitted the defense to call Krajewski as a witness. Kallergis' second assignment of error lacks merit.
 Assignment of Error Number Three "THE TRIAL COURT'S JUDGMENT AGAINST APPELLANT, JOHN KALLERGIS, AND IN FAVOR OF APPELLEES, QUALITY MOLD, INC. AND STEVE ZOUMBERAKIS, IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 18} Lastly, Kallergis argues that the trial court's judgment is against the manifest weight of the evidence. We disagree. *Page 10 
 {¶ 19} The law is clear that if a civil judgment is supported by some competent, credible evidence going to all of the essential elements of the case, there should not be a reversal by a reviewing court as being against the manifest weight of the evidence. CE. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus. "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. Id.
 {¶ 20} As to Kallergis' fraud in the inducement claim, we find that the judgment was not against the manifest weight of the evidence. To establish fraud in the inducement, "a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiffs reliance, and that the plaintiff relied upon that misrepresentation to her detriment." ABM Farms, Inc. v. Woods
(1998), 81 Ohio St.3d 498, 502. Kallergis argues that he would not have entered into the agreement if he had known that Montgomery and Slanta received more than the 25% that he received. Yet, much of the evidence in the record reflects that Kallergis did not justifiably rely on any representations when entering into the Acceleration and Reduction Agreement. Before he signed the Agreement, Kallergis had an experienced attorney review Quality Mold's financial records and the Agreement itself. Kallergis also signed Montgomery's and *Page 11 
Slanta's Acceleration and Reduction Agreements. Those Agreements specified exactly how much money Montgomery and Slanta were receiving. Kallergis need only have compared their Agreements to his Agreement to see that they were receiving more money. Based on these facts, Kallergis' reliance was not justifiable. Accordingly, we cannot conclude that the judgment as to the fraud in the inducement claim was against the manifest weight of the evidence.
 {¶ 21} As to Kallergis' breach of fiduciary duty claim, we also affirm the judgment below. "A `fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." In re Termination of Employment ofPratt (1974), 40 Ohio St.2d 107, 115. Kallergis argues that he was owed a heightened fiduciary duty because Quality Mold was a close corporation. However, a heightened fiduciary duty exists to protect minority shareholders from the majority or controlling shareholders. SeeCrosby v. Beam (1989), 47 Ohio St.3d 105, 108. Kallergis was not a minority shareholder in this case. In fact, he was one of the original four shareholders who founded the corporation. Furthermore, at the time of the Reduction and Acceleration Agreement and alleged breach of duty Kallergis was no longer a shareholder. He sold his shares four years earlier in the Stock Redemption Agreement. Therefore, we conclude that the judgment as to the breach of fiduciary duty claim was not *Page 12 
against the manifest weight of the evidence. Kallergis' last assignment of error lacks merit.
Cross-Appeal
 Cross-Assignment of Error Number One "THE TRIAL COURT ERRED IN REFUSING TO HAVE A HEARING TO DETERMINE WHETHER THE PLAINTIFF WAS GUILTY OF FRIVOLOUS CONDUCT UNDER [R.C.] 2323.51."
 Cross-Assignment of Error Number Two "THE TRIAL COURT ERRED IN NOT AWARDING ATTORNEY FEES TO THE DEFENDANT QUALITY MOLD, INC., FROM THE PLAINTIFF JOHN KALLERGIS FOR MAINTAINING A FRIVOLOUS ACTION UNDER [R.C.] 2323.51."
 {¶ 22} As Quality Mold's cross-assignments of error are interrelated, we address them together. In these cross-assignments of error, Quality Mold argues that the trial court erred in not holding a hearing and ultimately denying Quality Mold attorney fees pursuant to R.C. 2323.51. We disagree.
 {¶ 23} The decision to grant or deny sanctions is within the broad discretion of the trial court. Springfield v. Adams, 9th Dist. No. 22069, 2005-Ohio-591, at ¶ 15. Accordingly, we review such a decision for an abuse of discretion. Id. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore, 5 Ohio St.3d at 219. *Page 13 
 {¶ 24} This court has held that a trial court "`must schedule a hearing only on those motions which demonstrate arguable merit and where a trial court determines there is no basis for the imposition of sanctions, it may deny the motion without a hearing.'" Adams at ¶ 16, quoting Ohio Dept. of Adm. Servs. v. Robert P. Madison Internatl,Inc. (2000) 138 Ohio App.3d 388, 399. Accordingly, we review the decision to hold a hearing under an abuse of discretion standard as well. See DeCarlo v. Estate of Maxwell, 167 Ohio App.3d 131,2006-Ohio-3116, at ¶ 12.
 {¶ 25} In its motion for attorney fees, Quality Mold relied solely on the evidence obtained in discovery and presented throughout trial to argue that Kallergis' claim was frivolous. It did not argue that it had additional documents, testimony, or other evidence to present at the hearing. The trial court found that based on the evidence at trial there was no arguable merit in the motion and relied on DeCarlo to conclude that a hearing was not necessary. Upon our review of the record before us, we cannot conclude that the trial court abused its discretion in refusing to hold a hearing or in denying Quality Mold attorney fees. Quality Mold's cross-assignments of error are overruled.
 III {¶ 26} Kallergis' three assignments of error are overruled. Quality Mold's *Page 14 
two cross-assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants/Cross-Appellees.
 SLABY, P. J., MOORE, J., CONCUR *Page 1