[Cite as *Roberts v. Roberts*, 2013-Ohio-1733.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| RHONDA ROBERTS, | : | |
| | | CASE NOS. CA2012-07-015 |
| Plaintiff-Appellee/ | : | CA2012-07-016 |
| Cross-Appellant, | | |
| | : | O P I N I O N |
| | | 4/29/2013 |
| - vs - | : | |
| | : | |
| JOHN D. ROBERTS, | : | |
| | : | |
| Defendant-Appellant/ | | |
| Cross-Appellee. | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DRA 2010 609

The Farrish Law Firm, Michaela M. Stagnaro, 810 Sycamore Street, 6th Floor, Cincinnati, Ohio 45202, for plaintiff-appellee/cross-appellant

James R. Kirkland, 130 West Second Street, Suite 840, Dayton, Ohio 45402, for defendant-appellant/cross-appellee

**M. POWELL, J.**

{¶ 1} Defendant-appellant/cross-appellee, John Roberts (Husband), and plaintiff-appellee/cross-appellant, Rhonda Roberts (Wife), both appeal a decision of the Clinton County Court of Common Pleas, Domestic Relations Division, granting a divorce between them and dividing their property.

{¶ 2} The parties were married in 1992. They have two children, a daughter born in 1993 and a son born in 1998. Husband has a farming business and an excavation business. During the marriage, Wife handled the bookkeeping for Husband's businesses but was otherwise a stay-at-home mother. In early April 2010, Wife moved out of the marital home. She filed a complaint for divorce on July 30, 2010. A hearing was held before a magistrate in June and August 2011.

{¶ 3} On October 21, 2011, the magistrate found that (1) the marriage terminated on July 30, 2010, the date Wife filed for divorce; (2) there were two mortgages on the marital home: a first mortgage with a balance of $125,505.63, and a home equity line of credit with a balance of $16,682.47; (3) the parties had two joint bank accounts: a Liberty Bank account with a balance of $42,225.10, and a checking account with a balance of $1,173.05; (4) the value of Husband's farming and excavating equipment was $382,900; and (5) all property of the parties was marital property with the exception of crops planted and harvested in 2010. The magistrate awarded Wife one-half of the equity in the marital home, one-half of the value of the joint bank accounts, and one-half of the value of the farming and excavating equipment.

{¶ 4} The magistrate awarded Husband the profits from crops planted in 2010, awarded Wife $320,600 as her share of the parties' marital property, and ordered Husband to pay $320,600 to Wife as follows: $150,600 to be paid within 90 days from the effective date of the divorce decree, and $170,000 to be paid in quarterly payments beginning "on the first day of the fourth full month after the effective date of the Divorce Decree * * * for 20 consecutive quarters (every three months) or until said amount is paid in full." The magistrate also assessed a 5 percent interest on the quarterly payments.

{¶ 5} On November 2, 2011, Husband filed 16 objections to the magistrate's decision

and requested 21 days to supplement them upon the filing of the transcript of the hearing. Wife also filed objections to the magistrate's decision. The transcript of the hearing was filed on March 9, 2012. On April 16, 2012 (38 days later), Husband filed supplemental objections. Wife moved to dismiss the supplemental objections.

{¶ 6} The trial court granted some objections and denied other objections of Husband, and denied Wife's objections. With regard to Husband's supplemental objections, the trial court found that to the extent those objections "raise[d] new issues not originally identified in the original Objections filed November 2, 2011, the Court shall not consider those issues as timely filed. The Court shall not ignore the filing, however, as it does contain argument in support of the [original] 16-listed Objections." The trial court upheld the magistrate's decision regarding the termination date of the marriage, the amounts due on the marital home mortgages, the value of the parties' two joint bank accounts, and the award to Husband of the 2010 net crop profits.

{¶ 7} By divorce decree filed on June 8, 2012, the trial court ordered Husband to pay $307,851.22 to Wife. Husband's payment plan requires him to pay $125,600 to Wife within 90 days from the effective date of the divorce decree, and $157,251.22 in quarterly payments (the payment schedule for the quarterly payments is identical to the schedule ordered by the magistrate). The trial court assessed a 3 percent interest on the quarterly payments.

{¶ 8} Husband appeals, raising six assignments of error. For ease of discussion, we will address Husband's assignments of error out of order. We will also address his second, third, and fifth assignments of error together. On cross-appeal, Wife raises one cross-assignment of error.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE TRIAL COURT ERRED BY USING A LATER DATE FOR THE

- 3 -

VALUATION OF THE MARITAL PROPERTY WHICH WAS NEARLY A YEAR AFTER THE DATE THE COURT DETERMINED TO BE THE TERMINATION OF THE MARRIAGE.

{¶ 11} Assignment of Error No. 3:

{¶ 12} THE JUDGE FAILED TO RULE ON OBJECTIONS MADE BY APPELLANT EVEN THOUGH THE ISSUES WERE RAISED IN THE INITIAL OBJECTIONS.

{¶ 13} Assignment of Error No. 5:

{¶ 14} THE JOINT MARITAL BANK ACCOUNT WAS OVERVALUED BECAUSE OF THE IMPROPER DATE USED FOR DIVISION.

{¶ 15} In his second assignment of error, Husband argues the trial court erred in using May 2011 as the valuation date for the two marital home mortgages rather than the balances as they existed in April 2010 when Wife moved out of the marital home. In his fifth assignment of error, Husband argues the trial court erred in using March 22, 2010 as the valuation date for the parties' two joint bank accounts because it does not reflect pending marital expenses that were ultimately paid by Husband.

{¶ 16} The record shows that Husband failed to properly object to the magistrate's decision regarding the foregoing valuation dates in his original objections.

{¶ 17} In his third assignment of error, Husband takes issue with the trial court's finding that Husband's challenge to the mortgage valuation date was not raised in his original objections. Husband asserts it was properly raised in his original objection No. 1: "[Husband] states that he believes the Magistrate has used the improper dates and figures for debts and credit as it may affect the property items in this matter."

{¶ 18} Civ.R. 53(D)(3)(b)(ii) provides that "an objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Husband's original objection No. 1 was very general, lacked any specificity, and did not refer at all to the mortgages and

- 4 -

joint bank accounts or their valuation dates (nor did his other 15 original objections). The trial court could not have ruled upon Husband's original objection No. 1 without speculating as to what dates, debts, and credits Husband was referring. Thus, Husband failed to state with particularity the grounds for his objections, as required under Civ.R. 53(D)(3)(b)(ii). *Mustard v. Mustard*, 12th Dist. Nos. CA2009-06-078, CA2009-09-118, 2010-Ohio-2175, ¶ 28.

{¶ 19} According to Civ.R. 53(D)(3)(b)(iv), "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Because Husband did not file objections to the mortgages and joint bank accounts in accordance with Civ.R. 53(D)(b)(3), he has waived his right to appeal these issues. *Hamilton v. Digonno*, 12th Dist. No. CA2012-05-108, 2013-Ohio-151, ¶ 19.[1]

{¶ 20} We recognize that within Husband's original objections, Husband requested the right to supplement his objections once the hearing transcript was filed. While Civ.R. 53(D)(3)(b)(iii) allows a party to seek leave of court to supplement objections, the trial court never granted leave for Husband to file any supplemental objections, or a memorandum to raise objections he failed to raise in his original motion. *Mustard*, 2010-Ohio-2175 at ¶ 29. In addition, while Husband requested 21 days "to supplement the objections upon the filing of the complete transcript," he did not file his supplemental objections until 38 days after the transcript was filed. Therefore, even if the trial court had granted Husband leave to file supplemental objections, such objections would have been untimely.

{¶ 21} We also note that Husband has not assigned as error the trial court's failure to

---

1. Husband does not argue that the trial court's decision regarding the mortgages and joint bank accounts

rule upon his motion to file supplemental objections or claimed an abuse of discretion by the trial court in impliedly overruling his motion to file supplemental objections.

{¶ 22} We therefore find that the trial court properly declined to rule on Husband's objection to the valuation date for the two marital home mortgages. We also find that Husband has waived his right to appeal issues regarding the mortgages and joint bank accounts.

{¶ 23} Husband's second, third, and fifth assignments of error are overruled.

{¶ 24} Assignment of Error No. 1:

{¶ 25} THE COURT ERRED BY USING JULY 30, 2010 AS THE TERMINATION DATE OF THE MARRIAGE WHICH RESULTED IN SEVERAL ASSETS BEING OVERVALUED.

{¶ 26} Husband argues the trial court abused its discretion in using July 30, 2010, the date Wife filed for divorce, as the termination date of the marriage. Husband asserts that because he bore sole financial responsibility for the marital house, the children, and the farm after Wife moved out of the marital home, the most equitable termination date should be April 1, 2010, when the parties began living apart.

{¶ 27} We note at the outset that Husband did not specifically object to the July 30, 2010 termination date in his original objections, but objected to it in his supplemental objections. However, because the trial court ostensibly construed Husband's original objection No. 1 as challenging the termination date of the marriage, we will address whether the trial court abused its discretion in finding that the marriage terminated on July 30, 2010.

{¶ 28} Traditionally, the proper date for the termination of a marriage, for purposes of property division, is the date of the final divorce hearing. R.C. 3105.171(A)(2); *Fillis v. Fillis,*

---

constitutes plain error.

12th Dist. Nos. CA2008-10-093, CA2008-10-101, 2009-Ohio-2808, ¶ 8. However, when the trial court determines "the date of the final hearing would be inequitable and that a de facto termination of the marriage occurred at an earlier time, the trial court has the discretion to select dates that it considers equitable[.]" *Id.*; R.C. 3105.171(A)(2)(b). As a result, because the trial court has broad discretion to select dates it considers equitable, and because the "determination of the termination date of a marriage is largely a question of fact," this court will not disturb the trial court's finding absent an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Where there is competent, credible evidence to support the trial court's decision, there is no abuse of discretion. *Fillis* at ¶ 8.

{¶ 29} The trial court found that "[g]iven the lengthy history of this case and the somewhat complicated financial transactions and appraisals the Court must decide," July 30, 2010 was an equitable termination date of the marriage. We find that the trial court did not abuse its discretion in adopting July 30, 2010 as the marriage termination date. A spouse's unilateral decision to leave the marital home "does not, in and of itself, constitute a de facto termination of marriage." *Day v. Day*, 40 Ohio App.3d 155, 158 (10th Dist.1988); *Dill v. Dill*, 179 Ohio App.3d 14, 2008-Ohio-5310, ¶ 11 (3d Dist.). By contrast, the act of filing a divorce complaint formally and clearly shows the spouse's intent regarding the marriage.

{¶ 30} Husband's first assignment of error is accordingly overruled.

{¶ 31} Assignment of Error No. 4:

{¶ 32} THE TRIAL COURT ERRED BY FAILING TO FIND THAT A $27,000 DEBT WAS OWED ON THE KINZE PLANTER AT THE TERMINATION OF THE MARRIAGE. THIS RESULTED IN OVERVALUING THIS ASSET BY $27,000.

**{¶ 33}** Husband argues the trial court erred in failing to find there was a $27,000 marital debt on a Kinze planter at the time the marriage terminated.

**{¶ 34}** When dividing property in a divorce proceeding, a trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). After determining whether the assets are separate or marital property, the trial court must then disburse a spouse's separate property to that spouse, and divide the marital property equally between the spouses unless the court finds that an equal division would be inequitable. R.C. 3105.171(C)(1), (D); *Boyer v. Boyer*, 12th Dist. Nos. CA2010-04-083, CA2010-05-109, 2011-Ohio-989, ¶ 9. The trial court is given broad discretion in fashioning a property division and will not be reversed absent an abuse of that discretion. *Boyer* at *id.*

**{¶ 35}** The magistrate found that the value of Husband's farming and excavating equipment was $382,900 and that Wife was entitled to one-half of the value. The magistrate's finding was based on two separate March 2011 appraisals of the equipment, one by Frank McCullough and the other by Herbert Erwin. The record shows McCullough valued the Kinze planter at $27,000 and that the magistrate used that figure in her valuation of the equipment. The Kinze planter was identified in two exhibits of Husband: exhibit DD (titled "John's Position at Trial") which lists a $27,000 marital debt on the Kinze planter, and exhibit G which lists Husband's monthly expenses and, when applicable, the balance due at the "end of March 2010 or close thereto." Exhibit G shows a monthly payment of $630.41 on the Kinze planter and a $27,000 balance.[2] Both exhibits G (in its original form) and DD were admitted into evidence.

---

2. We note that among Husband's exhibits is exhibit Q, a security agreement between Husband and Farm Credit Services of America, PCA. Exhibit Q shows that on March 22, 2010, Husband entered into a promissory note in the amount of $27,000 with Farm Credit Services (to be repaid in four annual payments of $7,564.86). The document identifies the Kinze planter as collateral. Exhibit Q was neither identified nor admitted at the hearing before the magistrate.

{¶ 36} In his original objections, Husband argued that exhibits DD and G clearly showed that "as of the June/July 2010 separation," there was a $27,000 marital debt on the Kinze planter, and that the magistrate erred in using a figure from 2011. In his supplemental objections, Husband argued that given the $27,000 marital debt on the Kinze planter owed to Farm Credit Services, he "should be credited $13,500 on the total settlement of what is owe[d] [Wife]." The trial court overruled the objections on the ground there "[was] no evidence this Court could find that a debt existed on this item as of July 30, 2010."

{¶ 37} We find that the trial court's failure to find there was a marital debt on the Kinze planter at the time the marriage terminated or thereabout was unreasonable, and thus an abuse of discretion.

{¶ 38} Husband testified that as shown on exhibit G, there was a debt on the Kinze planter, a payment was due annually, the annual payment had already been made for 2011, and the next annual payment was due in January 2012. Husband also testified that as shown on exhibit DD, at the time he and Wife separated, there was a debt on the Kinze planter, and the overall debt owed on the planter, a 1997 Kenworth Semi, a combine, a Chevrolet pickup truck, and a Caterpillar truck totaled $74,22.41. Both exhibits G and DD list a $27,000 debt on the planter. At the time of the hearing, Husband believed his marriage terminated in April 2010, when Wife moved out of the marital home, and therefore used that date with regard to the marital property and marital debts, rather than the date Wife filed for divorce.

{¶ 39} It is well-established that while as a general matter, "a trial court should consistently apply the same set of dates when evaluating all marital property that is subject to division and distribution in a divorce proceeding, * * * it is within the trial court's discretion to use different valuation dates where the valuation or account balances at a certain date were

the only evidence before the court." *Homme v. Homme*, 12th Dist. No. CA2010-04-093, 2010-Ohio-6080, ¶ 62. "[T]he circumstances of some cases may require the court to use different dates for different valuation purposes, so that the court need not utilize the same valuation date for each item of marital property." *Keyser v. Keyser*, 12th Dist. No. CA2000-06-127, 2001 WL 337242, *3 (Apr. 9, 2001).

{¶ 40} In the case at bar, the only valuation date presented regarding the Kinze planter was at the times the parties separated. While the magistrate found that the marriage terminated on July 30, 2010, the record shows that other dates were used to value the mortgages and the joint banking accounts. Thus, it was unreasonable for the trial court to find that no debt existed on the Kinze planter.

{¶ 41} Husband's fourth assignment of error is well-taken and sustained. The property division is reversed to the extent the court found there is no debt on the Kinze planter, and this matter is remanded to the trial court to determine the marital debt that existed on the planter at the time the marriage ended and to adjust the division of marital property by allocating that debt between the parties.

{¶ 42} Assignment of Error No. 6:

{¶ 43} THE COURT HAS IMPOSED A REPAYMENT SCHEDULE THAT IS IMPOSSIBLE FOR APPELLANT TO COMPLY WITH.

{¶ 44} Husband argues the payment plan imposed by the trial court is impossible to comply with, and is thus unreasonable. Husband also argues that to order him to pay interest on the property settlement is "purely punitive in nature."

{¶ 45} Husband objected to the payment plan and the imposition of the 5 percent interest rate in both his original and supplemental objections. Husband argued that because "mortgages [were] currently 3.9% and passbook CD money [was] 1.1%," the 5 percent

interest rate was an excessive penalty. Husband requested that the interest rate be no higher than 2 percent or, alternatively, that no interest be charged unless he was late on a payment.

{¶ 46} The trial court sustained Husband's objection to the 5 percent interest rate as follows: "The Court agrees that 5% is higher than the current statutory rate of 3% used by the Court in assessing rates on Judgments. It would appear 3% is a more equitable interest rate." The trial court, however, overruled Husband's objection to the payment plan as follows:

> [Husband] challenges the payment plan recommended by the Magistrate to ensure [Wife] receives her share of the marital assets. As pointed out by [Wife], [Husband] assuredly has known for some time that ultimately, a significant amount of money would be owed to [Wife] to equalize the marital assets. Liquidity is always a problem when assets are primarily real estate and/or farm equipment. To suggest as [Husband] contends that there is no basis for [Husband] to obtain funds to comply with the payment plan ignores refinancing options on the marital real estate as well as other alternatives. * * * With respect to the recommended Payment Plan itself, the Court finds it reasonable and possible. To the extent [Husband] cannot comply through no fault of his own, that defense would presumably be presented at a Motion for Contempt that would likely be filed by [Wife.]

{¶ 47} Husband testified (1) he would be able to refinance the real property within the 90-day time frame; (2) if need be, he would borrow money from his father; and (3) he could not pay Wife within a year but could make yearly payments of $40,000 to $50,000.

{¶ 48} The trial court noted that Husband can obtain funds to comply with the payment plan by refinancing the marital real estate and/or using other alternatives. Upon thoroughly reviewing the record and the parties' testimony, we find that the payment plan ordered by the trial court is not an abuse of discretion.

{¶ 49} We likewise uphold the trial court's assessment of a 3 percent interest rate. We

note that in his objections, Husband never specifically argued that the imposition of an interest rate was punitive. Rather, Husband challenged the magistrate's imposition of a 5 percent interest rate and requested that no interest be charged unless he was late on a payment. Husband correctly states that a trial judge is not obligated to affix interest to monetary obligations which arise out of a property division upon divorce. *Koegel v. Koegel*, 69 Ohio St.2d 355, 357 (1982); *Drake v. Drake*, 12th Dist. No. CA2001-10-247, 2002-Ohio-6106, ¶ 26. The converse is also true: "Whether to award interest upon obligations arising out of the division of marital property is within the discretion of the trial court." *Koegel* at syllabus. We find no abuse of discretion in the trial court's imposition of a 3 percent interest rate.

{¶ 50} Husband's sixth assignment of error is overruled.

{¶ 51} We now turn to Wife's cross-assignment of error:

{¶ 52} THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO AWARD WIFE HER EQUITY SHARE OF THE 2010 NET CROP PROFITS.

{¶ 53} Wife argues the trial court abused its discretion when it declined to award Wife half of the net profits from the 2010 crops. Wife asserts she is entitled to half of the profits because the seeds were planted in March 2010, before the parties' separation, and were from the 2009 harvest which was kept in bins on their farm. We disagree.

{¶ 54} Wife testified that when she moved out of the marital home in April 2010, Husband still had some crops from the 2009 harvest which was kept in grain bins on the farm. Wife asserted that in 2010, Husband "replanted with the 2009 crop." Wife explained that she "was there when he took it out of the bin and put it in the grain cart." Wife also testified Husband "planted 2010 usually April-May," and that she did not help Husband plant or harvest the crops in 2010.

{¶ 55} Husband testified he planted the 2010 crops after the parties separated and that Wife did not help him plant or harvest them. Admitted at the hearing was a September 2010 statement from Crop Production Services (CPS) showing that Husband owed CPS $36,772.04. Husband testified the bill was for "some seed, fertilizer and spray for the crop [he] raised in 2010 after [the parties'] split," and that the bill was incurred after the parties' separation. With regard to the leftover crops from the 2009 harvest, Husband testified that these crops had contracts and advances against them, that is, they had already been paid for but not yet delivered to the buyers.

{¶ 56} The parties' foregoing testimony clearly show that Wife did not help Husband plant or harvest the 2010 crops. Husband unequivocally testified he planted the 2010 crops after the parties' separation. By contrast, Wife did not testify Husband planted the 2010 crops before she moved out of the marital home and her testimony as to when the crops were planted was confusing. As to whether the crops planted in 2010 were from the 2009 harvest, because the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony, we find no error in the trial court's decision finding that Wife was not entitled to a share of the 2010 net crop profits. *See Homme*, 2010-Ohio-6080 at ¶ 60-61.

{¶ 57} Wife's cross-assignment of error is accordingly overruled.

{¶ 58} Judgment affirmed in part, reversed in part, and remanded for further proceedings in accordance with the law and consistent with this opinion.

RINGLAND, P.J. and PIPER, J., concur.