[Cite as *Hurst v. Hurst*, 2020-Ohio-4006.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JOSHUA HURST, | : | |
| Appellant, | : | CASE NO. CA2019-07-119 |
| | : | O P I N I O N |
| - vs - | | 8/10/2020 |
| | : | |
| CHRISTINA HURST, | : | |
| Appellee. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2018-08-0734

Cook Howard Law, Ltd., Melynda Cook Howard, 1501 First Avenue, Middletown, Ohio 45044, for appellant

The Lampe Law Office, LLC, M. Lynn Lampe, 9277 Centre Pointe Drive, Suite 100, West Chester, Ohio 45069, for appellee

**PIPER, J.**

{¶1} Joshua Hurst ("Husband") appeals from the decision of the Butler County Common Pleas Court, Domestic Relations Division, which, in a divorce proceeding, ordered a division of marital property and marital debt and additionally awarded attorney fees to Christina Hurst ("Wife"). For the reasons described below, this court affirms the decision of

the domestic relations court.

{¶2} The parties married in January 2013. No children were born of the marriage. In March 2018, the parties decided to end their marriage and Wife left the marital home. In April 2018, with the assistance of family, Husband and Wife met to discuss an agreement to dissolve the marriage and divide their marital property and debts.

{¶3} The meeting produced a handwritten and signed document listing Husband and Wife's marital assets and debts and a plan to divide the assets and debts. The major assets were the marital home, the home appliances, and a tractor. The major debts were the first and second mortgage on the home, a Sears credit card, which was used to pay for the appliances, a loan for the tractor, and a Citi credit card balance. At the time of the meeting, the parties owed approximately $410,000 on the first mortgage, $23,000 on the second mortgage, $16,500 on the tractor, $7,300 on the Sears card, and $6,500 on the Citi card. In total, the parties held marital debt of approximately $464,000.

{¶4} The handwritten agreement indicated that Wife would pay the Sears and Citi credit cards. Husband would refinance the two mortgages and the tractor, for which he would need to seek financing. The parties agreed that they would jointly pay for an attorney. While not stated expressly, implicit in the agreement was that Husband would retain the marital home.

{¶5} Wife thereafter retained an attorney to prepare a dissolution. However, after several months, the parties could not come to an agreement on terms of the dissolution. Wife became concerned that Husband did not intend to, or could not move forward with, refinancing the tractor and the marital home and removing her name from the debts.

{¶6} Wife retained divorce counsel and subsequently moved back into the marital home. Approximately five days later, Husband filed for divorce. Husband simultaneously applied for a restraining order, seeking to exclude Wife from the marital home. Husband

supported the application with an affidavit in which he averred that Wife had been absent from the marital home for a period in excess of thirty consecutive days and that he was fearful she may attempt to reenter the residence. The court granted the restraining order, ex parte. Police were summoned and informed Wife she would need to leave the marital home. Husband thereafter moved for spousal support, to assign payment of marital debt, and for an alternate valuation date.

{¶7} Wife answered and counterclaimed. In her counterclaim, Wife requested an award of attorney fees. Wife then moved the court to set aside the restraining order. Wife's motion indicated she previously had left the marital home in reliance on the parties' agreement to divide the marital debt and Husband's assurance that he could refinance the debt. However, she had subsequently learned that Husband did not have financing in place. Wife asked the court to grant her exclusive occupancy of the home and represented that she would assume all bills related to the home with no contribution from Husband and would thereafter list the marital home for sale.

{¶8} In September 2018, the parties appeared before a magistrate. As a result of that hearing, the magistrate continued the matter for one month so that the parties could work on a global settlement. The record indicates that Husband represented that he would have financing in place by the next hearing date.

{¶9} Husband did not appear for the next court date, apparently due to being delayed by traffic. Husband had also not obtained financing. The parties dismissed all outstanding motions with the exception of Husband's motion for an alternate valuation date. The magistrate set the matter for a final hearing on the merits.

{¶10} The final hearing commenced in January 2019. Husband testified that approximately $405,500 was owed on the first mortgage and $22,500 was owed on the second mortgage. The mortgage payments from March to May 2018 were paid using the

parties' joint bank account. From June 2018 on, Husband had been paying the mortgage on his own. The mortgage payments had increased from $2,500 to $3,000 per month. Husband testified that the parties owed $14,000 on the tractor.

{¶11} Husband wished to keep the marital home and tractor and he indicated he would assume the debt on both by refinancing. Husband also would keep the home appliances and would take on the debt associated with the principal balance owed on the Sears credit card, or approximately $6,500.

{¶12} With respect to the Sears card, Husband asked for an alternate valuation date of June 2018. This was because after June 2018, the promotional period of deferred interest on the Sears card had expired and $5,000 in deferred interest charges had been added to the principal balance. Thus, as of the final hearing, the parties' owed approximately $12,000 on the Sears credit card. Husband asked that Wife be responsible for the interest portion because the Sears card was in Wife's name and she was the person who paid the bill each month. Husband stated he had never had access to the Sears account.

{¶13} Husband stated he began the refinancing process in March 2018 by having the home appraised. An appraiser valued the marital home at $450,000. Wife agreed with this appraisal. Husband submitted a letter from a mortgage banker indicating that the bank had "conditionally pre-approved" Husband for refinancing. On cross-examination, Husband conceded that his preapproval limited the loan to 90% of the appraised value. Accordingly, while approximately $428,000 was due on the first and second mortgages, the maximum that Husband could borrow based on the appraisal was $405,000. Husband testified that he could make up for any shortfall in financing by selling his nonmarital truck and would also consider selling the tractor.

{¶14} Husband testified that after the parties entered into the handwritten

- 4 -

agreement, he cashed out his pension with AK Steel. He had done so with Wife's knowledge and permission, because she had to sign a document allowing him to withdraw the pension. He withdrew the funds for the purposes of pursuing the refinance.

{¶15} After tax deductions, Husband received approximately $45,000 from the pension withdrawal. On cross-examination, Husband confirmed that he had since spent $16,000 of the pension funds on vacations and that he had been spending several thousand dollars more each month than he was earning. Husband had also increased his credit card debt by $10,000, through spending on a Discover credit card.

{¶16} Husband testified that he had been working overtime and his income for 2018 was approximately $80,000. He was seeking to take on debt that – including his separate non-marital debt – would total $500,000. Husband believed that he could afford this debt and indicated that he thought he would be finally approved for financing by March 2019, or six weeks after the final hearing date. This date coincided with Husband's two-year anniversary at his job, which was apparently a requirement for underwriting the loan.

{¶17} Husband rested and Wife began her case-in-chief by calling her mother, Michelle Stoffer, to testify. Husband objected to Stoffer's testimony on the basis that Stoffer had not been disclosed to him as a witness. The court overruled Husband's objection and permitted Stoffer's testimony.

{¶18} Stoffer testified that she had the ability to pay off the mortgages and tractor, in cash, and could do so in a matter of days. Stoffer also testified that she had been present at the April 2018 meeting and heard Husband discussing cashing out his pension. She understood that he would use those funds to assist with refinancing the marital home. Husband told Stoffer that he had a "pre-approval in place" and that refinancing could take place "immediately."

{¶19} Stoffer would have been fine with Husband taking on the marital home and

- 5 -

associated debt if he had been able to refinance the home at any time in 2018. However, he had continuously represented that he had approval for a loan and did not. Stoffer did not want to continue to wait for Husband to obtain financing and felt it would be easier for Husband and Wife to let her help the couple get out from under their debt.

{¶20} Wife testified that since separation, she had been making payments on the Citi and Sears credit card. With respect to the expiration of the deferred interest on the Sears card, Wife testified that because she anticipated a dissolution, she believed that she and Husband would have the matter resolved before the expiration of the promotional period. Wife stated that she spoke to Husband on the phone multiple times concerning the need to pay off the Sears debt, but he just said "okay." Wife testified that Husband was insistent that he was taking the home and would keep the appliances and take the Sears debt.

{¶21} The court announced its decision from the bench. The court would award the home to Wife if Stoffer could provide proof of paying off the mortgages and tractor loan by the next hearing date. With respect to the Sears credit card, the court found that both parties were financially irresponsible and had the ability to pay the principal before the deferred interest accrued. Accordingly, the court ordered an equal division of the Sears debt. The court further ordered an equal division of the Citi card debt. Finally, the court ordered Husband to vacate the marital home. The court continued the hearing in progress to allow both sides to effectuate the court's order. Two weeks later, the parties returned to court and indicated that all matters had been resolved pursuant to the court's order except for Husband's payment of his half of the interest portion on the Sears card.

{¶22} The parties subsequently returned to court for a hearing on Wife's claim for attorney fees. At the start of the hearing, Husband clarified that he was not challenging the reasonableness of Wife's attorney's billings or her hourly rate. Instead, Husband disputed

that he should be responsible for paying any of Wife's attorney fees.

{¶23} Wife testified she paid approximately $9,000 in attorney fees and submitted into evidence a copy of her attorney's billing records. Wife testified concerning the delays and additional expenses she had incurred, which she attributed to Husband's conduct. Her complaints included Husband's repeated claims to have financing in place, his use of the pension funds for purposes other than refinancing, and his overspending. Wife testified that Husband told her she would never get the marital home in the divorce. Wife's attorney testified and opined that this was an appropriate case for attorney fees because Wife was willing to give Husband everything he wanted in the divorce, but the case still did not settle.

{¶24} The domestic relations court later issued an order granting Wife $5,360 in attorney fees. In so finding, the court noted the evidence concerning Husband's use of the pension funds, Husband's repeated representation that he was approved for refinancing, his failure to obtain financing, and his inability to obtain financing even by the time of the final hearing. The court also noted certain actions taken by Husband with respect to discovery and filings that lacked merit or delayed the case. In sum, the court found that an award of attorney fees was equitable. Husband appeals, raising four assignments of error.

{¶25} Assignment of Error No. 1:

{¶26} THE TRIAL COURT ERRED IN GRANTING APPELLEE WIFE ATTORNEY FEES.

{¶27} Husband argues that the domestic relations court abused its discretion in awarding Wife attorney fees. Husband challenges the validity of various factual findings made by the court to support its fee award. Additionally, Husband argues that any delay in the case was not his fault but was instead attributable to Wife's failure to provide timely discovery.

{¶28} Pursuant to R.C. 3105.73(A), a domestic relations court "may award all or part

of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable" as part of the divorce proceeding. To determine whether the award is equitable, the statute directs the court to consider the respective parties' "marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). An award of attorney fees is within the discretion of the domestic relations court. *Lykins v. Lykins*, 12th Dist. Clermont Nos. CA2017-06-028 and CA2017-06-032, 2018-Ohio-2144, ¶ 65. Consequently, an appellate court can reverse the domestic relations court's decision only upon finding an abuse of discretion. *Id.* To find an abuse of discretion, the appellate court must determine that the domestic relations court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶29} Husband argues that the court erred when it wrote in its decision that he "used proceeds from his retirement for non-marital purposes, contrary to the agreement of the parties that was memorialized in a handwritten agreement * * *." Husband contends that the handwritten agreement did not refer to the pension account, thus the domestic relations court erred in using this factor to justify an award of attorney fees.

{¶30} Husband is correct that the handwritten agreement did not refer to the pension. However, Wife testified that she agreed to the release of the pension funds based upon Husband's representation that he would use those funds to pay debt in order to allow him to qualify for a refinance. Stoffer corroborated this testimony. The evidence showed that refinancing was the only way Husband would be able to accomplish the goals of the handwritten agreement, i.e., Husband taking on the debt associated with the home. And the evidence was undisputed that rather than pay down his debt, Husband significantly increased his debt load and spent $16,000 of the pension funds on vacations. Husband's use of the pension funds was an appropriate consideration by the court as it relates to

Husband's conduct.

{¶31} Husband next argues that the court erred when it noted that Wife had retained an attorney to assist in a dissolution. Husband argues that both parties split the costs for the attorney and thus this was another factor that the court should not have considered in granting attorney fees. The domestic relations court did not err. The evidence presented at trial indicated that the parties shared the costs of the attorney, but that Wife retained the attorney.

{¶32} Husband also argues that the court erred by premising its attorney fee award on the fact that he failed to attend a review hearing. Husband contends that his failure to attend was because of bad traffic and therefore should not have been held against him. Husband additionally argues that his failure to attend the hearing did not cause an increase in attorney fees and was not a detriment to Wife. However, the domestic relation court's focus was less on the fact that Husband missed the hearing and more on the fact that Wife and Wife's attorney expended time and effort preparing for and attending the hearing. The record reflects that the previous review hearing had been continued due to Husband's representation that he could have financing in place by the next hearing date and therefore a global settlement could be entered at the review hearing. However, Husband had not obtained financing and did not appear for the hearing. This was a proper consideration by the domestic relations court.

{¶33} Next, Husband argues that the court erred in finding that he failed to provide statements to Wife regarding his retirement and pension assets. The evidence in the record supports the domestic relations court's conclusion that Husband failed to provide Wife with updated pension statements, profit sharing documents, and that Wife had to subpoena certain records. Husband's conduct during discovery was an appropriate consideration by the domestic relations court.

{¶34}  Husband also challenges the domestic relations court's determination that his conduct during discovery caused delay in the divorce.  Instead, Husband argues that the major source of delay was Wife's failure to provide him with discovery.  Although the court had some concerns about Husband's participation in discovery, the primary focus of concern as it relates to delay was not on discovery issues.[1]  Instead, the evidence presented at the hearing demonstrates that this was a case that should have been resolved quickly if Husband had acted reasonably.  As testified to by Wife's counsel, Wife was willing to offer Husband "her worst case scenario on day one" just to get the case settled and move on.  However, due to Husband's financial irresponsibility, his insistence on keeping the marital home and taking on a debt he could not afford, and his refusal to consider giving the marital home to Wife, the matter was not quickly resolved and was delayed.

{¶35}  Finally, Husband argues that Wife never moved for attorney fees and only asked for attorney fees while testifying.  In effect, Husband argues that the domestic relations court sua sponte ordered attorney fees.  However, Wife included a claim for attorney fees in her counterclaim.  This issue was discussed and resolved during the hearing after Husband's counsel questioned whether Wife moved for attorney fees.

{¶36}  In sum, the domestic relations court's decision on attorney fees reflects that the court considered the totality of circumstances with a focus on Husband's conduct.  The evidence was that Wife initially agreed to hire an attorney for a dissolution based upon the belief that Husband intended to proceed in good faith with the parties' handwritten agreement and the related oral agreement that he would use his pension funds to pay down debt and refinance "immediately."

{¶37}  Later, however, Husband informed Wife that his application for financing had

---

1. The record indicates that both parties had issues with exchanging discovery and that both had various excuses for not complying with discovery.

not passed underwriting and he would not be able to secure financing until the end of April 2019. Wife agreed to this extension. However, Husband was unwilling to sign an agreement that provided him with the extension but also gave Wife the option to refinance the marital home if Husband failed to refinance by the extension date. In this regard, Wife testified that Husband told her that she would never, "over his dead body," receive the marital home and that he would drag the legal proceedings on for as long as possible to frustrate her efforts.

{¶38} The domestic relations court also considered Husband's filing of several meritless motions. This included Husband's motion for spousal support, which he filed despite the evidence revealing that he and Wife had approximately the same income. The court also considered the motion for a restraining order, and the accompanying affidavit that implied that Wife was not living in the marital home, which the domestic relations court found to be false. This court finds no abuse of discretion in the court's decision to order Husband to pay a portion of Wife's attorney fees. This court overrules Husband's first assignment of error.

{¶39} Assignment of Error No. 2:

{¶40} THE COURT'S ALLOWANCE OF A NON-DISCLOSED WITNESS TO TESTIFY WAS AN ABUSE OF DISCRETION.

{¶41} Husband contends that the court abused its discretion in permitting Stoffer to testify because Wife failed to disclose Stoffer as a witness prior to the trial. Husband argues that the Butler County Domestic Relation Court's local rules requires exchange of witness lists 14 days prior to the trial. Husband argues that he was surprised by Stoffer's testimony because the plan had always been for him to receive the home in the divorce and Wife had made no effort to retain the home. Husband contends he was prejudiced because he only learned after Stoffer's testimony that she intended to "step in and buy the house * * *."

{¶42} The admission or exclusion of relevant evidence is a matter within the sound discretion of the trial court. *Kraemer v. Kraemer*, 12th Dist. Butler No. CA2017-08-120, 2018-Ohio-3847, ¶ 28. As such, this court reviews a trial court's decision to allow the testimony of an undisclosed witness under the abuse of discretion standard. *Earley v. Earley*, 12th Dist. Clinton No. CA2012-01-001, 2012-Ohio-4772, ¶ 37, citing *Kallergis v. Quality Mold, Inc.*, 9th Dist. Summit Nos. 23651 and 23736, 2007-Ohio-6047, ¶ 14. Allowing testimony of an undisclosed witness is an abuse of discretion when the nondisclosure causes unfair surprise and prejudice to the opposing party. *See Bernard v. Bernard*, 7th Dist. Columbiana No. 00 CO 25, 2002 Ohio App. LEXIS 499, *9 (Jan. 30, 2002), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83 (1985). "However, 'the exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary.'" *Id.* quoting *Nickey v. Brown*, 7 Ohio App.3d 32, 34 (9th Dist.1982).

{¶43} As a preliminary matter, Husband's argument implies that the fact that Wife was seeking the marital home was a surprise. However, the question of who would retain the marital home had been an issue in the case since Wife moved back into the home, was subsequently removed from the home, and then later moved the domestic relations court to grant her exclusive occupancy. In addition, Wife's attorney announced at the beginning of the final hearing that the major issue to be decided by the court was who would retain the marital home. Thus, Husband was well aware that a primary purpose of the hearing was to determine who would retain the marital home.

{¶44} Even if this court concluded that the domestic relations court erred in permitting Stoffer's testimony where Wife failed to disclose her as a witness, this court also cannot conclude that Husband has established any unfair surprise or unfair prejudice. The import of Stoffer's testimony was that she had funds available to pay off the mortgages and tractor loan and was willing to do so immediately. Husband does not articulate how his

cross-examination would have differed based on foreknowledge of Stoffer's testimony. And it seems unlikely that advance notice of Stoffer's intended testimony would have resulted in a different cross-examination.

{¶45} Husband also does not articulate how foreknowledge of Stoffer's testimony would have changed the outcome at trial. Husband still had yet to receive underwriting approval for refinancing and the evidence indicated he was unlikely to ever be approved for the total amount needed given his poor debt to income ratio. On the other hand, Stoffer was prepared to pay off the debt immediately and to return to court within days to offer proof. The court concluded that Stoffer's proposal was the best way to allow Husband and Wife to disentangle financially.

{¶46} Stoffer's testimony was prejudicial in the sense that it provided the court with a solution that went against Husband's wishes in the divorce. However, it was not unfairly prejudicial. It was Husband's conduct that ultimately led to his inability to refinance the debt in a timely manner, and which resulted in a contested hearing at which Husband was aware that the court could decide to grant the marital home to Wife. Having found no abuse of discretion, this court overrules Husband's second assignment of error.

{¶47} Assignment of Error No. 3:

{¶48} THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY $2700 TO APPELLEE FOR THE INTEREST ON THE SEARS CREDIT CARD.

{¶49} Husband argues that the court erred in ordering him to pay half the accrued interest on the Sears credit card, or $2,700. He argues that this division of the debt was inequitable because during the physical separation, Wife only paid the minimum monthly payments on the Sears credit card and was able to save $16,000. Husband asserts that during this same time that Wife was saving money, he was making the full mortgage payment, which was as high as $3,000 per month.

{¶50} The Revised Code provides that "the division of marital property shall be equal."[2] R.C. 3105.171(C)(1). However, if the domestic relations court finds an equal division would be inequitable, then the court must divide the property in a manner it determines is equitable. *Id.*; *Roberts v. Roberts*, 12th Dist. Clinton No. CA2012-07-015 and CA2012-07-016, 2013-Ohio-1733, ¶ 34. The domestic relations court is given broad discretion in fashioning a property or debt division and will not be reversed absent an abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54.

{¶51} Husband's argument that the domestic relations court should have considered that he was paying the mortgage ignores the fact that he chose to live in the marital home and pay the mortgage. With respect to the Sears credit card, Wife would have been understandably reluctant to pay down principal on debt associated with appliances that she was not using and anticipated that she would never use again if Husband refinanced and remained in the marital home. The domestic relations court specifically found credible Wife's testimony that she had multiple discussions with Husband about the deferred interest period ending and paying the bill. The domestic relations court found that Husband was not credible and further found that both parties were financially irresponsible and had the ability to pay the balance before the deferred interest period ended. Accordingly, the court found it equitable that both parties should split the deferred interest.[3]

---

2. "Marital property" includes marital debt. *Smith v. Smith*, 12th Dist. Clermont No. CA2017-11-059, 2018-Ohio-3548, ¶ 9.

3. Apparently, the dissent gives little significance to the testimony indicating that the parties had several discussions as to the need to pay off the balance so to avoid the deferred interest. Both parties were aware of the consequence of not paying off the balance before the expiration of the promotional period. Both parties had the ability to pay off the balance prior to the expiration of the promotional period. Both parties were aware that the Sears debt was marital. Even though the dissent may have decided the issue differently than the domestic relations court, it was not unreasonable for the court to find it equitable that both parties should share in the consequence of not timely paying off a marital debt.

{¶52} This court finds no abuse of discretion. The domestic relations court's decision was consistent with the statutory presumption of an equal division of marital property. Both parties were financially irresponsible with respect to the Sears card and therefore an equal division of the interest was equitable. Accordingly, this court overrules Husband's third assignment of error.

{¶53} Assignment of Error No. 4:

{¶54} THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT CREDIT OR MONIES FOR THE PRINCIPAL HE PAID ON MORTGAGES DURING THE PENDENCY OF THIS CASE.

{¶55} Husband argues that the court erred by not awarding him a credit for $3,500 to $4,000 for monies he paid towards the principal of the mortgage while the parties were separated.[4] Husband argues it was inequitable that the domestic relations court did not credit him for these payments because he was forced to contribute to the unpaid interest on the Sears card.

{¶56} As stated in the previous assignment of error, Husband voluntarily took on the mortgage payments and chose to live in the marital home during the period of the parties' separation and the pendency of the divorce. Thus, Husband received a benefit from the monies he paid. Even if he had not received the benefit of exclusive occupancy, Husband's argument ignores that both parties stipulated at trial that whoever received the marital home in the divorce would not pay the other any value for home equity. The substance of this agreement was that the party taking the home would take it without any obligation to make any future payment to the other spouse. The parties' stipulation encompasses a claim for principal and therefore Husband has waived this argument on appeal. *See Heaton v.*

---

4. The record indicates that only a small portion of the $3,000 monthly mortgage payment was applied to principal.

*Heaton*, 6th Dist. Lucas No. L-08-1434, 2010-Ohio-6214, ¶ 67-68. This court overrules Husband's fourth assignment of error.

{¶57} Judgment affirmed.

S. POWELL, P.J. concurs.

RINGLAND, J., dissents.

**RINGLAND, J., dissenting.**

{¶58} I respectfully dissent from the majority's resolution of Husband's third assignment of error. Though it is accurate that a trial court is given "broad discretion" in fashioning a property or debt division, I believe the trial court's decision with respect to the deferred interest fees was an abuse of discretion. *Smith v. Smith*, 12th Dist. Clermont No. CA2017-11-059, 2018-Ohio-3548, ¶ 10 (standard of review for division of property).

{¶59} In the present case, the parties attempted to come to a financial understanding in the form of a written agreement allocating who was responsible for certain due and owing marital debts. In the agreement, Husband expressed his intention to refinance the house, equity line, and tractor account while Wife agreed to pay the Sears and Citibank credit cards.

{¶60} The Sears card, though it was used to purchase marital property, was listed solely in Wife's name. The documentary evidence reveals that the credit card statements were sent only to Wife and were forwarded to her new residence. The multiple statements entered into the record plainly state that the promotional balance must be paid in full by December 17, 2018 to avoid paying deferred interest charges. On the second page of the statements, the deferred interest charges are calculated for the account holder. That is to say, the consequences of not paying the entire balance by that date was abundantly clear.

{¶61} Throughout the pendency of this case, Husband made all the payments on

the first mortgage, the equity line, and the tractor. Wife similarly made payments on the Sears and Citibank cards, but only made the minimum payment on the Sears card. Therefore, when the promotional period ended, the account ballooned an additional $5,474 in deferred interest fees. This did not have to happen, as both parties concede that they had the ability to pay the debt in full had they chosen to. The loss in $5,474 in marital assets was completely avoidable.

{¶62} During the hearing, Wife claimed that she had called Husband about this issue, but ultimately chose not to pay the full balance despite knowing about the looming deferred interest fees. Wife reasoned that since Husband was going to be awarded the house in the divorce anyway, "[w]hy would I pay off a credit card for appliances that I have no access to and that I might not be getting with a house that he's keeping?"

{¶63} The outcome of this case provides the answer to that rhetorical question. Following a contested hearing, Wife was awarded the home and the appliances that came with it, but now the parties are subject to $5,474 in completely avoidable deferred interest fees. Despite the fact that Wife controlled the account and was sent the detailed billing notices warning of the fees, the trial court chose to fault both parties equally. I do not believe that is an appropriate result. Therefore, I must respectfully dissent on the third assignment of error, would reverse the trial court's judgment, and remand for further proceedings.