[Cite as *Bobie v. Bobie*, 2023-Ohio-3293.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| REGINA BOBIE, | : | CASE NO. CA2022-12-119 |
| Appellee, | : | |
| | : | O P I N I O N<br>9/18/2023 |
| - vs - | : | |
| | : | |
| FRANCIS BOBIE, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR 20 09 0633


Zachary D. Smith LLC, and Zachary D. Smith, for appellee.

Smith, Meier & Webb, LPA, Mark D. Webb, for appellant.



**M. POWELL, J.**

{¶ 1} Appellant, Francis Bobie ("Husband"), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, dividing the parties' assets and liabilities and awarding spousal support and attorney fees to appellee, Regina Bobie ("Wife").

{¶ 2} Wife filed a divorce complaint on September 23, 2020; Husband answered and counterclaimed for divorce on October 29, 2020. Three children were born issue of the marriage. Only the third child was unemancipated at the time the divorce was filed; he turned 18 years old in October 2022. Wife claimed the parties were married on August 10, 1992; Husband claimed they were married on December 27, 1997. The trial court found that "[t]he best evidence supports the parties married August 10, 1992 and participated in ceremonial nuptials at Holy Spirit Cathedral on December 27, 1997." The parties are both originally from Ghana and are naturalized American citizens.

{¶ 3} Husband is an engineer in the field of oil and gas and was employed by General Electric in Cincinnati, Ohio for many years. In 2008, he began taking international assignments in Ghana, Singapore, and Switzerland and worked as an expatriate for approximately ten years. Between 2015 and 2019, his annual wage was in the mid "six figures," with an average annual wage of $550,937. He became unemployed in March 2020 but continued his projects in Ghana throughout the divorce proceedings. Wife earned bachelor's and master's degrees during the marriage. She worked as an underwriter for Cincinnati Financial until she established her home health care business. Between 2016 and 2021, her annual wage ranged from $3,231 (2017) to $87,740 (2021). Due in part to complicated expatriate tax filings and other business interests, the parties have filed separate tax returns for nearly 20 years of their marriage. Both Husband and Wife have been successful in their career pursuits.

{¶ 4} Issues regarding the division of the parties' marital and separate property in Ghana and the United States were considered during a contested four-day divorce trial in May 2022. Husband represented himself. Both parties testified. Isaac Agyemang and Lawrence Tagoe, both Ghanaian real estate appraisers, and Wilson Opoku, an employee of Wife, testified on behalf of Wife. Joana Acheampong and Elizabeth Hosu, both sisters

of Husband, Dominic Kwaku Darkwa, a chartered surveyor, and William Bobie, a chartered surveyor by profession and Husband's brother, testified on behalf of Husband.

{¶ 5} The properties in the United States included: (1) the marital house in West Chester, Ohio; (2) Maanu Bobie Properties, LLC, a joint business venture largely holding real estate in Fairfield, Ohio; (3) Bobie Whitmore, LLC, a joint venture holding real estate in Fairfield, Ohio; (4) Affribean, LLC, a logistics company owned and operated by Wife; (5) Loving Care Transitional Home, LLC, a home health care business owned and operated by Wife; (6) BTC, LLC, holding a commercial office building in West Chester, Ohio; and (7) BKK Living Trust, holding two tracts of undeveloped land in West Chester, Ohio.

{¶ 6} The properties in Ghana included: (1) the Asikasu Farm, a farm Husband intended to develop into a tourist attraction similar to an electric farm the parties visited in Singapore; (2) Clifton Gallery 1 (a one-bedroom apartment) and Clifton Gallery 2 (a two-bedroom apartment), two condominium units with high-end amenities and located within a desirable real estate market; (3) Diamond Villa, Husband's residence in a gated community in Accra; (4) BA Auto Parts, holding real estate, buildings, equipment, and inventory; and (5) Adade, LLC, a company established by Husband to aid in the acquisition of inventory for BA Auto Parts.

{¶ 7} The trial court issued a decision on August 31, 2022; the divorce decree was journalized on December 6, 2022. The trial court found that all the properties in Ghana and the United States were marital property, awarded the marital home and the Ghanaian properties to Husband, and awarded all the other properties located in the United States to Wife. The trial court found that the total marital property equaled $4,904,097.56 and ordered Husband to pay Wife a lump sum property equalization payment of $922,591.13 within 90 days of the filing of the divorce decree. The trial court awarded Wife $10,000 in attorney fees, ordered Husband to pay Wife $10 a year in spousal support, found that

Husband had committed financial misconduct by failing to disclose or cooperate in the exchange of discovery, and reserved jurisdiction to order the sale of the marital home or make other orders as necessary should Husband refuse to pay Wife the property equalization payment.

{¶ 8} Husband now appeals, raising nine assignments of error. Husband challenges the trial court's property division, the awards of spousal support and attorney fees, and the court's finding Husband committed financial misconduct.

{¶ 9} Property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Smith v. Smith*, 12th Dist. Butler No. CA2021-09-109, 2023-Ohio-982, ¶ 28. The trial court must first determine "what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). "Although the statute does not mention debt as an element of marital and separate property, the rules concerning marital assets have been consistently applied to marital and separate debt." *Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 13. We review the classification of property or debt as marital or separate under the manifest-weight-of-the-evidence standard and will not reverse a trial court's classification if it is supported by competent and credible evidence. *Smith* at ¶ 28. In determining whether competent and credible evidence exists, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 11.

{¶ 10} After classifying the parties' assets and debts as either marital or separate property, the trial court must then distribute the separate property and equitably divide the marital property between the spouses in accordance with the provisions of R.C. 3105.171.

*Smith* at ¶ 29. The trial court has broad discretion to determine an equitable and fair division of the marital estate. *Id.* An appellate court will not reverse a trial court's property division in a divorce proceeding absent an abuse of discretion. *Id.* An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT LACKED JURISDICTION TO ORDER THE ALLOCATION OF PROPERTY IN GHANA.

{¶ 13} Husband argues the trial court erred by allocating the Ghanaian properties because the court lacks subject-matter jurisdiction to issue orders directly affecting title to properties located within a foreign country.[1] Husband cites *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815 (10th Dist.), in support of his argument. Husband also briefly notes that none of the appraisal experts were able to confirm ownership of the Ghanaian properties. The ownership issue of the Ghanaian properties will be addressed under Husband's third assignment of error.

{¶ 14} "Subject-matter jurisdiction is a court's power over a type of case." *Pratts v. Hurley,* 102 Ohio St. 3d 81, 2004-Ohio-1980, ¶ 34. Subject-matter jurisdiction "does not relate to the rights of the parties, but to the power of the court." (Emphasis omitted.) *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75, 1998-Ohio-275. "[T]he subject-matter jurisdiction of a trial court * * * to formulate an equitable division of the marital assets commences when either party files a complaint for divorce and a division of the marital property." *Bolinger v. Bolinger*, 49 Ohio St.3d 120, 123 (1990). "[A] domestic relations

---

1. Prior to trial, Husband filed a motion to "deny jurisdiction," arguing that matters relating to any assets in Ghana should be litigated there. At trial, Husband argued that the Ghanaian properties should be handled by a Ghanaian court because the marriage contract was signed there, and challenged the trial court to "go to Ghana, and verify" some of the evidence presented by Wife.

court is a court of equity and has 'full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters.'" *Maloney v. Maloney*, 160 Ohio App.3d 209, 2005-Ohio-1368, ¶ 57 (2d Dist.), quoting R.C. 3105.011(A).

{¶ 15} In *Groza-Vance*, the Tenth District Court of Appeals observed that

> a court of one state has no power to directly affect title to land located wholly within the borders of another state. In *Fall v. Eastin* (1909), 215 U.S. 1, 30 S.Ct. 3, the United States Supreme Court noted as firmly established, "the doctrine that the court, not having jurisdiction of the *res*, cannot affect it by its decree, nor by a deed made by a master in accordance with the decree[.]" *Id.* at 11. * * * However, the Supreme Court also noted that "[t]he territorial limitation of the jurisdiction of courts of a state over property in another state has a limited exception in the jurisdiction of a court of equity * * *." *Id.* at 8. "A court of equity, having authority to act upon the person, may indirectly act upon real estate in another state, through the instrumentality of this authority over the person." *Id.*

*Groza-Vance*, 2005-Ohio-3815 at ¶ 17. Thus, "a court of equity, by means of its power over the person of a party, may compel the party to act in relation to property located outside the court's territorial jurisdiction. The court's decree does not operate directly upon the property or affect its title, but is made effectual through coercion of the defendant." (Citations omitted.) *Id.* at ¶ 18.

{¶ 16} Contrary to Husband's assertion, the trial court's divorce decree allocating the Ghanaian properties did not directly affect title to those properties. Rather, the trial court found only that the Ghanaian properties were marital property because Husband acquired an interest in the properties during the marriage, determined the value of the properties, and allocated them to Husband pursuant to its equitable power. The trial court, therefore, did not exceed its jurisdiction by allocating the Ghanaian properties.

{¶ 17} Husband's first assignment of error is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} IF THE COURT DETERMINES THE TRIAL COURT APPROPRIATELY

EXERCISED JURISDICTION, THE PROPERTIES IN GHANA ARE THE DEFENDANT'S SEPARATE PROPERTY AND SHOULD NOT BE ALLOCATED AS A MARITAL ASSET.

{¶ 20} Husband argues that even if the trial court had subject-matter jurisdiction over the Ghanaian properties, it erred by finding they were marital property and not separate property. Husband claims that he and his siblings have only a beneficial interest in the Ghanaian properties as a result of the passing of their parents in 2018. In support of his argument, Husband cites his testimony, the testimony of his siblings, and Exhibits AA, BB, MM, and NN.

{¶ 21} "Marital property" includes "all real and personal property that currently is owned by either or both of the spouses" and "[a]ll interest that either or both of the spouses currently has in any real or personal property," "that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i), (ii). In contrast, "separate property" includes "[a]n inheritance by one spouse by bequest, devise, or descent during the course of the marriage," "any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage," and "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(i), (ii), and (vii).

{¶ 22} The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of evidence, to trace the asset to separate property. *Smith*, 2023-Ohio-982 at ¶ 33. "Traceability presents a question of fact, and so a court of appeals must defer to the trial court's findings." *Id.* An appellate court will not reverse a decision on tracing so long as it is supported by competent, credible evidence. *Id.*

{¶ 23} Husband's father died in 2018; he was predeceased by his wife. The record

- 7 -

indicates that the estate of Husband's parents owns multiple assets in Ghana, including farmlands and dwellings. One of the farmlands is the Adade Farm in Kasoa, Ghana. Acheampong, a sister of Husband, and Wife both testified that Husband built and started BA Auto Parts on the Adade Farm prior to 2018. By all accounts, the land surrounding BA Auto Parts belongs to the estate. BA Auto Parts closed in December 2020. Between 2016 and 2019, pallets of spare and car parts were shipped to Ghana every two months or so at Husband's request. Marital funds were used to purchase the shipped inventory.

{¶ 24} Wife testified that the Asikasu Farm was acquired by Husband in the summer of 2019 while the family was visiting Husband in Ghana; Husband intended to develop the property into a tourist destination similar to the Singapore electric farm. Husband needed to give $3,000 to "the chief just to talk about acquiring the land." Husband retrieved the money from a bank. The Asikasu Farm was registered with Ghana's Land Commission as a sole proprietorship on October 10, 2019.

{¶ 25} Wife testified that the two Clifton Gallery condominiums were under construction when Husband first showed them to her, and that is why he could not rent them. Husband was accompanied by the facility manager during that visit and wanted to show Wife the properties he had bought. The next time Wife saw the condominiums, they were completed and Husband had a key.

{¶ 26} Likewise, Wife testified that the Diamond Villa was under construction when she went to Ghana in 2017; Husband was trying to replicate the marital house. The record shows that Husband filed a lawsuit in Ghana against the developer of the Villa (Exhibit 21). Wife testified that a review of the Ghana lawsuit showed Husband used marital funds to build the Villa. Exhibit 21 shows that (1) Husband was the sole trustee of a trust he incorporated in Ghana in January 2014; (2) in June 2014, the trust entered into a purchase agreement with the developer to buy a "four-bedroom detached house with maids room and

family area" for $285,000; (3) Husband signed the contract on behalf of the trust; (4) Husband signed two separate checks payable to the developer: a $142,000 check from Barclays Bank on August 26, 2015, and a $109,775 check from The Royal Bank on December 13, 2016; (5) neither check indicates they were signed by Husband on behalf of the trust; and (6) there is no evidence that the trust was linked to or acting on behalf of the estate.

{¶ 27} Wife's testimony and evidence show that the Asikasu Farm, the Diamond Villa, the two Clifton Gallery condominiums, and the business BA Auto Parts were acquired during the parties' marriage; they were therefore marital property under R.C. 3105.171(A)(3). Consequently, Husband bore the burden of proving by a preponderance of the evidence that the foregoing properties and business were separate property. Husband asserts he met his burden based upon his testimony, the testimony of his siblings, and Exhibits AA, BB, MM, and NN.

{¶ 28} The testimony of Husband's sisters centered on the Adade Farm, the farmland upon which Husband built and started BA Auto Parts. The Adade Farm and the Asikasu Farm are two separate farmlands. One sister testified that all the properties her parents owned were passed on to her and her siblings upon the death of their father. She further testified she was not familiar with the financial state of the properties as such was managed solely by Husband and their brother William. Both sisters testified that Husband was tasked with managing the cattle and the farmlands on behalf of their family after he became unemployed in 2020.

{¶ 29} Notwithstanding his opening statement that Wife was trying "to strip me of everything that I own in Ghana," Husband repeatedly testified that the Ghanaian properties were owned by the estate and that he (and his siblings) only had a beneficial interest in them. When confronted with evidence showing otherwise, Husband gave varying

explanations. He claimed he was simply complying with the "U.S. accounting laws" when he listed the assets of the Asikasu Farm on his 2019 income tax return. He further claimed many documents presented by Wife were manufactured. For example, Husband claimed not recognizing the Royal Bank check, claimed that The Royal Bank does not exist in Ghana, and claimed that the Barclays Bank check was manufactured. He testified he sued the developer of the Villa on behalf of the estate and that he set up the trust simply to help manage his beneficiary interest in the Villa. He further testified that one of the condominiums was built by his father when Wife would have been two years old.

{¶ 30} The four exhibits cited by Husband do not disclose how the Ghanaian properties were titled. Exhibits MM and NN both concern the Adade Farm. Exhibit NN is a "plan of the land property of Adade Farms." Exhibit MM, titled "Indenture," is a June 9, 1980 document between the Chief of Ofankor (Lessor) and Husband's father and managing director of the Adade Memorial Farms Ltd. (Lessee). The document was registered with the Land Commission in 1998.

{¶ 31} Exhibit BB is a notarized letter from two of Husband's siblings stating that Husband is a beneficiary of the estate, is allowed to live in what is presumably the Villa due to his unemployment, and is managing parts of the estate which include "the Farms at Adade and Asikasu, and Multi family Dwelling properties." Exhibit AA is a notarized declaration by Husband and his siblings stating that (1) all the properties owned by their parents were consolidated into an estate, (2) Husband and his siblings are trustees of the estate and only beneficiaries, and (3) the estate consists of vehicles, monetary accounts, multi and single-family dwellings, and "Farms at Kasoa and Asikasu."

{¶ 32} At trial, Husband conceded that although the estate owns multiple properties, he only submitted partial evidence of ownership regarding one single asset, the Adade Farm (Exhibits MM and NN), and only did so for the benefit of the court. Husband claimed he

wanted to but was not authorized to submit evidence of ownership history of the Ghanaian properties. Husband explained that upon meeting with his siblings, he was directed not to disclose documents showing the ownership of the Ghanaian properties and was not authorized to discuss those assets in court. The siblings' meeting resulted in Exhibit AA. William, Husband's brother, confirmed Husband's testimony. William further indicated that ownership information would be provided only after Wife filed a lawsuit in Ghana.

{¶ 33} As one of the estate's trustees with a beneficiary interest in the Ghanaian properties, Husband was plainly best situated to provide dispositive evidence of how and when the Ghanaian properties were acquired and titled. Husband failed to do so, instead only providing a self-serving declaration with a vague and general description of what the estate allegedly owns.

{¶ 34} In light of the foregoing, we find that Husband failed to prove that the Ghanaian properties were separate. The trial court, therefore, did not err by finding that the Ghanaian properties were marital properties and by allocating them to Husband.

{¶ 35} Husband's second assignment of error is overruled.

{¶ 36} Assignment of Error No. 3:

{¶ 37} THE TRIAL COURT ERRED IN VALUING ASSETS BY USING INCONSISTENT METHODS AND DATES.

{¶ 38} Husband argues the trial court abused its discretion in its valuation of the parties' assets in the United States and Ghana because it used inconsistent methods and dates. The trial court established December 31, 2020, as the property valuation date. Husband does not challenge this valuation date.

{¶ 39} Prior to making an equitable division of marital property, a trial court must determine the value of marital assets. *Flynn v. Flynn*, 196 Ohio App.3d 93, 2011-Ohio-4714, ¶ 10 (12th Dist.). "Rigid rules to determine value cannot be established, as equity

depends on the totality of the circumstances." *Baker v. Baker*, 83 Ohio App.3d 700, 702 (9th Dist.1992); *Briganti v. Briganti*, 9 Ohio St.3d 220, 221-222 (1984). Thus, a trial court has broad discretion in determining the value of marital property, and its decision regarding property valuation will not be disturbed on appeal absent an abuse of discretion. *Flynn* at ¶ 10. "However, in determining the value of marital property, the trial court must have sufficient evidence in order to justify and/or support the figure that it establishes." *Id.*, citing *McCoy v. McCoy*, 91 Ohio App.3d 570, 575 (8th Dist.1993). Therefore, whatever valuation the trial court chooses must be supported by competent, credible evidence. *Id.* When valuing a marital asset, the trial court is neither required to use a particular valuation method nor precluded from using any method. *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 64. The value assigned to each marital property is established through documentary exhibits and the testimony of the parties and expert witnesses. *See Wei v. Shen*, 12th Dist. Butler No. CA2002-12-300, 2003-Ohio-6253.

{¶ 40} As a general matter, a trial court should consistently apply the same set of dates when evaluating all marital property that is subject to division and distribution in a divorce proceeding. *Homme v. Homme*, 12th Dist. Butler No. CA2010-04-093, 2010-Ohio-6080, ¶ 62. However, the circumstances of some cases may require the court to use different dates for different valuation purposes, so that the court need not utilize the same valuation date for each item of marital property. *Keyser v. Keyser*, 12th Dist. Butler No. CA2000-06-127, 2001 Ohio App. LEXIS 1642, *8 (Apr. 9, 2001). In fact, when assigning values to marital assets, pragmatic considerations largely dictate the choice of the date utilized to make the value determination. *Wei* at ¶ 21. Moreover, as this court has previously stated, "it is within the trial court's discretion to use different valuation dates where the valuation or account balances at a certain date were the only evidence before the court." *Homme* at ¶ 62.

{¶ 41} Husband argues the trial court erred by using the county auditor tax appraisals to value the real estate located in the United States (with the exception of the marital house) because these appraisals are infrequently updated and are therefore unreliable. Husband argues the trial court should have ordered the real property to be appraised and the appraisal cost to be allocated between the parties. Husband notes that he requested funds to conduct appraisal of the assets but his request was denied. Husband argues that the court's reliance on the county auditor tax appraisals effectively resulted in dates other than December 31, 2020, the valuation date established by the trial court for the real property in the United States.

{¶ 42} During the proceedings, the trial court ordered that Husband be allocated the marital house, which was owned free and clear of any encumbrance, and permitted him to refinance or sell the property. The proceeds from any refinance or sale would then be available to Husband to finance the litigation. Husband took neither option, instead moving the trial court to stay the sale of the house which the trial court granted. The record therefore belies Husband's assertion he was denied funds to conduct appraisals of the real property located in the United States.

{¶ 43} It was not incumbent on the trial court to direct the parties on how to present their case or to order appraisals of the real property. If Husband believed the county auditor tax appraisals were unreliable, he could have submitted evidence, or offered testimony, as to the value of the real property. He did not. The trial court made its valuation of the real property located in the United States based upon the only valuation dates and appraisals presented at trial. Because this was the only evidence presented, the trial court did not abuse its discretion by using the county auditor tax appraisals and different dates to value the real property in the United States. *Keyser*, 2001 Ohio App. LEXIS 1642 at *9; *Wei*, 2003-Ohio-6253 at ¶ 19, 21.

{¶ 44} Husband next argues the trial court erred in valuing Loving Care Transitional Home, Wife's business, based upon its balance sheet because the court failed to add back into the value "depreciation and amortization of over $140,000.00." Husband further claims the trial court did not value the vehicle used in Wife's business. Contrary to Husband's claim, the record shows that Wife presented evidence of the value of the business vehicle and that the trial court included the value of the vehicle in its valuation of Wife's business.

{¶ 45} Husband's argument regarding depreciation is confined to a single sentence without any explanation of the argument or facts or reasoning supporting the argument in violation of App.R. 16(A)(7). Husband does not cite any caselaw or statutory authority for the proposition that depreciation should be considered in valuing property. Although depreciation may not be considered in determining a spouse's gross income for child support purposes (*see* R.C. 3119.01), there is no such provision applicable to the valuation of property. R.C. 3105.171 does not use the word "depreciation." *See Tanagho v. Tanagho*, 10th Dist. Franklin No. 93AP-1089, 1993 Ohio App. LEXIS 6264, *17 (Dec. 30, 1993) (finding that the absence of the word "depreciation" from R.C. 3105.171 means that the depreciation of a spouse's separately owned marital asset cannot be charged against the marriage); *Lowe v. Lowe*, 4th Dist. Pickaway No. 10CA30, 2011-Ohio-3340, ¶ 24 (finding that reading the statute as including depreciation or lost value adds language that is not there and alters the scope of the statute, which is the province of the General Assembly, not an appellate court). We find no merit to Husband's argument.

{¶ 46} Husband next argues the trial court erred by valuing the Ghanaian properties based upon the appraisal reports submitted by Wife. Specifically, Husband asserts that Agyemang's appraisal of the Asikasu Farm and Tagoe's appraisal of the Clifton Gallery condominiums are unreliable because the appraisers failed to determine ownership of these assets, did not physically inspect the properties, and used the wrong valuation methods. At

trial, Husband challenged the appraisers' valuation methodology and the reliability of their reports through his own expert witness, Darkwa. Husband did not provide appraisals of the properties.

{¶ 47} The testimony of the three expert witnesses/appraisers, and in particular that of Darkwa, clearly established that property ownership records are maintained at Ghana's Land Commission as long as both parties to a transaction register the transaction documents with the Commission. While the records are "public," they are not searchable without specific information. In order to request an ownership record, one must present a site plan specifically describing the location and boundaries of the property at issue. Site plans are not freely accessible and are generally provided by the owner of the property at issue. In other words, without the cooperation or permission of the property owner, one cannot verify the ownership of a property through the Land Commission. As discussed above, Husband was in the best position to provide dispositive evidence of ownership or, alternatively, documentation for Wife to search ownership through the Land Commission. However, Husband repeatedly failed to submit evidence of ownership history of the Ghanaian properties and refused to discuss the ownership of the Ghanaian properties at trial. Husband's argument challenging Agyemang's and Tagoe's failure to establish the ownership of the Asikasu Farm and the Clifton Gallery condominiums (and for that matter, of the other Ghanaian properties) is disingenuous.

{¶ 48} The trial court valued the Ghanaian properties based upon the evidence presented by the parties. Wife presented the appraisal reports and testimony of Agyemang and Tagoe; Husband presented Darkwa's testimony. Darkwa was solely hired to review the appraisal reports of Agyemang and Tagoe; he did not appraise the properties and Husband did not present appraisal reports. In determining the valuation of an asset in a divorce case, a trial court has discretion to weigh the testimony offered by the parties'

valuation experts. *See Hoag v. Stewart*, 8th Dist. Cuyahoga No. 100951, 2014-Ohio-4090; *Martin v. Martin*, 11th Dist. Trumbull No. 2105-T-0025, 2016-Ohio-7551 (the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony). We find no abuse of discretion in the trial court's valuation of the Ghanaian properties.

{¶ 49} In light of the foregoing, the trial court did not abuse its discretion in determining the value of the parties' assets located in the United States and Ghana. Husband's third assignment of error is overruled.

{¶ 50} Assignment of Error No. 4:

{¶ 51} THE COURT FAILED TO ADDRESS AND ALLOCATE HUSBAND'S DEBTS AND WIFE'S LIFE INSURANCE.

{¶ 52} Husband argues that the trial court failed to address and allocate Husband's debts and the cash value of Wife's insurance policies in its property division.

{¶ 53} The record shows that Wife has two separate life insurance policies, one with The Cincinnati Life Group Insurance Company with a cash surrender value of $7,947 (Exhibit 99), and one with National Life Group with a cash surrender value of $9,528.76 (Exhibit 100). Both exhibits were presented and admitted at trial. Wife concedes that the trial court erred by not allocating the cash surrender values of her life insurance policies. We therefore sustain Husband's fourth assignment of error regarding Wife's insurance policies.

{¶ 54} At trial, Husband presented Exhibits S and TT as evidence of his debts. Both exhibits were admitted. Exhibit TT is a list summarizing Husband's debts. Exhibit S is a compilation of Husband's debts that includes: (1) a $57,690.09 judgment in favor of American Express and against Husband and his Ghanaian company Adade; (2) Discover Bank (credit card debt) for $15,681.44; (3) Wells Fargo Vendor Financial Services (rent

payment default) for $112,687.95; (4) PNC Bank (credit card debt) for $10,334.58; (5) Capital One Mastercard (credit card debt) for $8,919.07; (6) Liberty Mutual Insurance (premium payments default) for $706.70; and (7) UC Health (medical debt) for $312. Husband briefly testified about the debts above at trial. The debts were all incurred during the duration of the marriage, which the trial court determined to be from August 10, 1992, until May 20, 2022 (the date of the final hearing).

{¶ 55} In the divorce decree, the trial court found that Wife's three credit cards debts were marital debts for which she was responsible, allocated the American Express debt to Husband, and did not specifically address or allocate Husband's other debts above.[2] The decree further provided, "Husband retains liability for any debt he failed to disclose during this process[.]" Likewise, the trial court's recapitulation table only lists and allocates Husband/Adade American Express debt and Wife's credit cards debts.

{¶ 56} As stated above, the concepts related to "property" relate to both the parties' assets and debts. *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 35. Marital debt includes any debt that is incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. *Nichols-Ross v. Ross*, 12th Dist. Butler No. CA2008-03-090, 2009-Ohio-1723, ¶ 26. Husband's argument involves the disposition of debts incurred during the marriage, not debts incurred after the date of the divorce. Similar to assets, debts accumulated during the marriage are presumed to be marital debts. *Id.* Accordingly, when a debt is incurred during the marriage, the burden is on the party seeking to have the debt classified as separate debt to demonstrate by a preponderance of the evidence that such debt was the separate obligation of the other

---

2. Wife's Exhibit 94 lists three separate American Express credit cards: Amex x74001 for $3,888.72; Amex – Amazon x32006 for $139.63; and Amex – Macys x9740 for 358.06. In its divorce decree, the trial court allocated only the larger American Express debt but incorrectly attributed that debt to account x9749 instead of account x74001.

spouse. *Cooper*, 2013-Ohio-4433 at ¶ 18.

{¶ 57} Both parties submitted exhibit evidence of their respective debts at trial, and both briefly testified about their debts. In that regard, Wife's testimony was more succinct than that of Husband. However, except for Husband/Adade's American Express debt, the trial court did not address Husband's debts, did not determine whether they were marital or separate debts, and did not allocate them in the divorce decree. In light of Husband's testimony and exhibits, Husband's debts listed above do not constitute "debt he failed to disclose during this process" pursuant to the divorce decree. The trial court, therefore, erred by failing to address and allocate Husband's debts with Discover Bank, Wells Fargo Vendor Financial Services, PNC Visa, Capital One Mastercard, Liberty Mutual Insurance, and UC Health.

{¶ 58} Husband's fourth assignment is sustained.

{¶ 59} Assignment of Error No. 5:

{¶ 60} THE TRIAL COURT'S AWARD OF SPOUSAL SUPPORT WAS AN ABUSE OF DISCRETION AS IT WAS NOT SUPPORTED BY THE FACTS AND WAS ORDERED TO ENFORCE AN INEQUITABLE PROPERTY SETTLEMENT PAYMENT.

{¶ 61} The trial court ordered Husband to pay Wife $10 a year in spousal support without a termination date. The trial court considered several factors set forth in R.C. 3105.18(C) before fashioning its award, including the parties' 29-year marriage, their education, their respective income and earning abilities, the disparity in income, the parties' standard of living during the marriage, the property division, and the relative assets and liabilities of the parties. The trial court retained jurisdiction over the amount and duration of spousal support. Concerned that Husband might not pay Wife the $922,591.13 property equalization payment and $10,000 attorney fees award or might declare bankruptcy, the trial court stated,

Specifically, this Court will retain jurisdiction to enforce payment of the property equalization and award of attorney fees, including, but not limited to, the ability to determine [that] the property payment is in the nature of maintenance, necessity or support and is therefore nondischargeable in bankruptcy, and/or making a future spousal support order, regardless of the spousal support ordered therein.

{¶ 62} Husband challenges the trial court's spousal support order, arguing the trial court (1) abused its discretion by failing to set a termination date, (2) significantly undervalued Wife's income (by failing to consider her business, real estate holdings, and other unspecified sources) and overvalued Husband's income (by failing to consider his expenses associated with living abroad and his current unemployment), and (3) improperly awarded spousal support for the purpose of securing Husband's payment of the property equalization payment and attorney fees and protecting against Husband receiving a discharge in bankruptcy. Husband specifically complains that the trial court was without authority to find that the property equalization payment was in the nature of maintenance, necessity, or support rendering it nondischargeable in bankruptcy.

{¶ 63} A trial court has broad discretion in determining spousal support awards. *Smith v. Smith*, 12th Dist. Clermont No. CA2016-08-059, 2017-Ohio-7463, ¶ 24. A reviewing court will not disturb a spousal support award on appeal absent an abuse of discretion. *Id.* "A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1)." *Id.* at ¶ 25. Pursuant to R.C. 3105.18(C)(1), "the trial court must consider statutory factors such as income of the parties, earning abilities of the parties, ages, duration of the marriage, standard of living during the marriage, education of the parties, and assets of the parties. *Id.* A reviewing court will presume each factor was considered, absent evidence to the contrary. *Id.*

{¶ 64} Husband does not develop any of the arguments he makes in this assignment of error. App.R. 16(A)(7) provides that an appellant's brief must include "[a]n argument

containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." This court may disregard an assignment of error if a party fails to identify in the record the error on which the assignment of error is based, or fails to argue the assignment separately in the brief. App.R. 12(A)(2); *Stewart v. Vivian*, 12th Dist. Clermont No. CA2015-05-039, 2016-Ohio-2892, ¶ 112. The burden of affirmatively demonstrating error on appeal rests with the party asserting error. *Sparks v. Sparks*, 12th Dist. Warren No. CA2010-10-096, 2011-Ohio-5746, ¶ 17. "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error." *Chambers v. Setzer*, 12th Dist. Clermont No. CA2015-10-078, 2016-Ohio-3219, ¶ 7.

{¶ 65} Husband does not explain why the lack of a termination date for the spousal support award is an abuse of discretion. The divorce decree indicates that the trial court retained jurisdiction over the duration of the spousal support. Moreover, R.C. 3105.18(B) provides that a spousal support award terminates upon the death of either party, "unless the order containing the award expressly provides otherwise," which is not the case here. We find no abuse of discretion.

{¶ 66} Husband next claims that in determining the parties' respective income, the trial court significantly undervalued Wife's income and overvalued his. Husband does not support this argument with any citations to the record, caselaw, or statutory authority. Husband refers only to Exhibit C, Husband's employment searches. In its decision, the trial court explicitly stated that it considered several "factors of particular importance," including the parties' respective income and earning abilities, the disparity in income, the property division, and the relative assets and liabilities of the parties and allocation herein. We find no abuse of discretion.

{¶ 67} Regarding Husband's third argument, R.C. 3105.18(C)(1)(i) and (n) provide that a trial court may consider "court-ordered payments by the parties" and "any other factor the court expressly finds to be relevant and equitable" in deciding whether spousal support is appropriate. The trial court found, and the record supports, that Husband sought to hide assets, obfuscated the nature and extent of his interest in assets, in particular the Ghanaian properties, and generally sought to avoid his marital responsibilities. Husband was ordered to pay Wife over $900,000 to equalize the property distribution and there is good reason to fear he will seek to avoid this obligation. Certainly, Husband's conduct during discovery and the divorce proceedings is indicative of future risk. As stated above, R.C. 3105.18(C)(1)(i) specifically permits a trial court to consider "any court-ordered payments by the parties," such as the property equalization payment order herein, as a factor in determining if spousal support is appropriate and, if so, the amount and duration of spousal support. Additionally, the trial court did not find that the property equalization payment and attorney fees were in the nature of maintenance, necessity, or support as to be nondischargeable in bankruptcy but only stated it would retain jurisdiction in that regard.

{¶ 68} In light of the foregoing, the trial court did not abuse its discretion in making its spousal support determination. Husband's fifth assignment of error is overruled.

{¶ 69} Assignment of Error No. 6:

{¶ 70} THE TRIAL COURT ABUSED ITS DISCRETION WHEN RESERVING JURISDICTION TO ORDER THE SALE OF 8194 MIST COURT OR "MAKE OTHER ORDERS AS NECESSARY."

{¶ 71} To enforce Husband's obligation to pay Wife the property equalization payment, the trial court "reserve[d] jurisdiction to order the sale of the [marital] home or make other orders as necessary." Husband argues this violates R.C. 3105.171(I) because it improperly modifies a final division of property without the consent of the parties. Wife

argues that a trial court has the authority to reserve the future sale of real property as an enforcement mechanism for an order.[3]

{¶ 72} R.C. 3105.171(I) provides, "A division or disbursement of property or a distributive award made under this section is not subject to future modification by the court except upon the express written consent or agreement to the modification by both spouses." Once a trial court has made an equitable property division and issued a divorce decree, it lacks jurisdiction to modify or amend the marital property division unless both spouses expressly consent in writing to the modification. *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 58; R.C. 3105.171(I). Stated another way, a trial court has control over the division of property at the time of the divorce decree; once the trial court divides the marital property and enters the final decree of divorce, the judgment is final and the court no longer possesses jurisdiction over the division of marital assets. *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 38; *Holden v. Holden*, 12th Dist. Brown No. CA2015-07-016, 2016-Ohio-5557, ¶ 34. A trial court cannot overcome this rule by an explicit reservation of continuing jurisdiction. *Abate v. Abate*, 9th Dist. Summit No. 19560, 2000 Ohio App. LEXIS 1268, *11 (Mar. 29, 2000). However, a trial court always retains full power to enforce the provisions of a divorce decree. *Pettit* at ¶ 58; *Cherry v. Figart*, 86 Ohio App.3d 123, 126 (12th Dist.1993).

{¶ 73} In the present case, the trial court retained jurisdiction to order the sale of the marital home, which was allocated to Husband, or make other orders as necessary in the event Husband does not pay Wife the property equalization payment. Pursuant to its

---

3. We note that R.C. 3105.171(J)(2) authorizes a trial court to issue "[a]n order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court." This subdivision of R.C. 3105.171 authorizes the sale of property as an aid to making an equitable property division in the first instance, not to order the sale of property which the trial court has already divided pursuant to a final decree of divorce. *See, e.g., Perozeni v. Perozeni*, 8th Dist. Cuyahoga No. 111771, 2023-Ohio-1140; *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345.

reservation of jurisdiction, the trial court's obvious intention was to order the marital home sold and transfer some amount of the sale proceeds to Wife to offset what Husband owed her. In other words, the trial court retained jurisdiction to allocate property to Wife which it had allocated to Husband in the final decree of divorce. We find this reservation of jurisdiction is in conflict with the legislature's clear mandate that courts do not retain jurisdiction to modify a final property division. *Pettit* at ¶ 60; *Schiavone v. Schiavone*, 126 Ohio App.3d 780, 782 (12th Dist.1998). Once the trial court issued its divorce decree, the manner by which the property was divided was fully adjudicated and cannot be modified. *Id.*

**{¶ 74}** While the trial court retains jurisdiction to administer and enforce the property division, it abused its discretion by retaining jurisdiction to modify the property division. Accordingly, we sustain Husband's sixth assignment of error and reverse the trial court's judgment to the extent it attempts to reserve jurisdiction to modify the property division. The matter is remanded to the trial court with instructions to remove the following language from the final divorce decree under the "19. Financial Misconduct" heading: "In the event Husband refuses to pay Wife the equalization payment, the Court reserves jurisdiction to order the sale of the home at 8194 Sea Mist Court or make other orders as necessary." *See Holden*, 2016-Ohio-5557 at ¶ 36.

**{¶ 75}** Assignment of Error No. 7:

**{¶ 76}** THE TRIAL COURT ERRED IN MAKING A FINDING OF FINANCIAL MISCONDUCT AGAINST HUSBAND.

**{¶ 77}** The trial court found that Husband engaged in financial misconduct during the marriage and divorce proceedings as follows:

> Wife presented overwhelming evidence as to Husband's financial misconduct. She was persuasive in showing that Husband * * * substantially and willfully failed to disclose

- 23 -

property and income to Wife. Husband engaged in dissipation, concealment or fraudulent disposition of assets causing additional time, resources, expenses, fees and aggravation for Wife.[4]

Husband challenges the trial court's financial misconduct finding, arguing it does not fall under the statutory definition of financial misconduct and is against the manifest weight of the evidence.

{¶ 78} An appellate court employs the manifest-weight-of-the-evidence standard when reviewing a trial court's determination that a party engaged in financial misconduct. *Robinson v. Robinson*, 12th Dist. Warren No. CA2012-11-118, 2013-Ohio-4435, ¶ 14. The reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Smith*, 2017-Ohio-7463 at ¶ 10. The burden of proving financial misconduct is on the complaining party. *Id.*

{¶ 79} Pursuant to R.C. 3105.171(E)(4), financial misconduct includes, but is not limited to, "the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. *Garcia v. Samano*, 12th Dist. Butler No. CA2018-05-094, 2019-Ohio-3223, ¶ 19. In cases of financial misconduct, "'typically, the offending spouse * * * either profit[s] from the misconduct or intentionally defeat[s] the other spouse's distribution of marital assets.'" *Id.*, quoting *Taub v. Taub*, 10th Dist. Franklin No. 08AP-750, 2009-Ohio-2762, ¶ 33. Upon finding financial misconduct, the trial court

---

4. In discussing Husband's failure to cooperate with discovery, the trial court's decision states, "[Husband] retained counsel twice and both attorneys withdrew due to his lack of assistance." The record shows that Husband's prior attorneys withdrew, in large part, due to his failure or inability to pay his legal bills. It is not apparent from the record or from the attorneys' motions to withdraw that they withdrew due to Husband's lack of assistance.

"may compensate the offended spouse with a distributive award or with a greater award of marital property."  R.C. 3105.171(E)(4).

{¶ 80} Upon thoroughly reviewing the record, we find the trial court did not err by finding Husband engaged in financial misconduct.

{¶ 81} Contrary to Husband's assertion, the definition of financial misconduct under R.C. 3105.171(E)(4) is not limited simply to "the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets," and may include misconduct in responding to discovery.  The divorce proceedings began in September 2020; the record shows that discovery was still pending in January 2022.  The record further shows that throughout the proceedings, Husband sought to conceal assets he owned, obfuscated the nature and extent of his interest in assets, in particular the Ghanaian properties, and generally provided nonresponsive, selective, or incomplete responses to discovery requests, despite the fact Husband's response to discovery requests was discussed with the trial court on several occasions.

{¶ 82} Nevertheless, Husband asserts that the fact Wife's exhibits included some of Husband's bank accounts "demonstrate[s] Husband provided substantial documentation." However, these records were obtained via subpoenas.  Just because Wife was able to discover concealed assets does not mean Husband did not engage in financial misconduct to conceal the assets, nor does it relieve him of his responsibility to engage in discovery in good faith, promptly, and honestly.

{¶ 83} In a September 2021 decision, the trial court described Husband's testimony regarding his assets and earnings as "careful" and "often times evasive."  In its August 31, 2022 divorce decision, the trial court found that Husband's "unmitigated and continued failure to cooperate with discovery and disclosure of assets [was] inexcusable," his "repeated failure to comply with discovery orders" was willful, and his "intent on following

only select orders and his failure to fully comply with court orders * * * frustrated the process." Explaining, the trial court stated,

> During the trial, Husband was often hostile to the proceedings. When asked about exhibits, Husband makes claim of document fraud and falsification unless the document suits his narrative. Not only did he fail to cooperate with mandatory disclosure of income and property, his actions throughout the divorce show a clear determination to conceal and obfuscate the nature and extent of interest in property. Husband demonstrated open dishonesty and lack of credibility.

{¶ 84} The trial court is in the best position to evaluate evidence and assess the credibility of witnesses. *Wei*, 2003-Ohio-6253 at ¶ 27. The trial court, in its discretion, found the testimony of Wife to be credible and that of Husband to be not credible. Upon review of the evidence presented, we find the trial court's finding Husband engaged in financial misconduct is not against the manifest weight of the evidence.

{¶ 85} Husband's seventh assignment of error is overruled.

{¶ 86} Assignment of Error No. 8:

{¶ 87} THE TRIAL COURT ABUSED ITS DISCRETION WHEN AWARDING ATTORNEY FEES TO WIFE.

{¶ 88} Husband argues the trial court abused its discretion by awarding attorney fees to Wife because Wife has significant income and assets whereas he was unemployed at the time of the divorce trial and presented evidence of his attorney fees debts and inability to pay. Husband asserts that the party seeking attorney fees "must establish (1) some financial need for the award and (2) the demand for attorney fees is reasonable under the circumstances." In support of his argument, Husband cites *Nori v. Nori*, 58 Ohio App.3d 69 (12th Dist.1989).

{¶ 89} Pursuant to R.C. 3105.73(A), a trial court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable."

"In determining whether the award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Id.* An award of attorney fees is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Hurst v. Hurst*, 12th Dist. Butler No. CA2019-07-119, 2020-Ohio-4006, ¶ 28.

{¶ 90} A review of *Nori* and the cases it relies upon shows that the two-part test cited by Husband refers to awards of attorney fees made under R.C. 3105.18, and not under R.C. 3105.73 as was the case here. *See Nori*, 58 Ohio App.3d at 75, citing *Kramer v. Kramer*, 12th Dist. Clermont No. CA87-02-014, 1987 Ohio App. LEXIS 9901 (Dec. 7, 1987), citing *Swanson v. Swanson*, 48 Ohio App.2d 85 (8th Dist.1976). The two-part test in *Nori* is therefore not applicable here.

{¶ 91} The trial court awarded attorney fees to Wife, stating, "The Court considers the facts as presented at trial and in particular the significant delays and unnecessary litigation and conduct of [Husband]. After reviewing the factors set forth in R.C. 3105.73, in light of the facts set forth in this decision, the Court finds an award of reasonable attorney fees to Wife in the amount of $10,000 to be equitable."

{¶ 92} At trial, Wife testified that because of Husband's failure to provide information or access to information about assets in Ghana, she had to hire a private investigator, an attorney, and surveyors and appraisers, thereby costing her $15,000. She further testified that Husband's response to discovery and the fact he constantly sent emails to her attorney resulted in a difficult and extremely expensive litigation.

{¶ 93} The trial court's consideration of Husband's conduct during discovery and the divorce trial was appropriate. *See Hurst*, 2020-Ohio-4006 at ¶ 33. The record supports the trial court's determination that Husband's lack of diligence and failure to fully comply with discovery orders, his evasive answers regarding the Ghanaian properties, and his

unsubstantiated claims that several of Wife's exhibits were falsified and fraudulent unless the documents suited his narrative caused significant delays and unnecessary litigation and expenses. Had Husband reasonably cooperated during discovery and been forthcoming with the Ghanaian properties and in his answers on cross-examination, this case could have been resolved more quickly and Wife would not have been required to hire attorneys and investigators in Ghana to obtain the necessary information and documentation regarding Husband's ownership of properties in Ghana.

{¶ 94} The trial court did not abuse its discretion in awarding Wife $10,000 in attorney fees.

{¶ 95} Husband's eighth assignment of error is overruled.

{¶ 96} Assignment of Error No. 9:

{¶ 97} THE TRIAL COURT'S CUMULATIVE ERROR OPERATED TO DENY DEFENDANT DUE PROCESS AND A FAIR TRIAL.

{¶ 98} Husband argues that the cumulative effect of the trial court's numerous errors resulted in a final judgment entry/divorce decree that was neither fair nor equitable toward him, thereby warranting a new trial.

{¶ 99} Pursuant to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168. This court has previously noted its reluctance to apply the cumulative error doctrine in civil cases. *See Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 66; *Allen v. Summe*, 12th Dist. Butler No. CA92-04-067, 1993 Ohio App. LEXIS 2553, *3 (May 17, 1993). However, even setting aside such reluctance, the cumulative error doctrine is not

applicable to cases where there has not been a finding of multiple instances of harmless error. *Nationwide* at *id.* Harmless or nonprejudicial errors cannot become prejudicial by sheer weight of numbers alone. *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 25.

{¶ 100} This court has sustained Husband's fourth and sixth assignments of error and will remand the case for the trial court to allocate the cash value of Wife's insurance policies, address and allocate six of Husband's debts, and strike language from the divorce decree. Nonetheless, we find that the cumulative error doctrine is inapplicable here because the errors combined here do not require a new trial. *See Snell v. Snell*, 5th Dist. Richmond No. 13CA80, 2014-Ohio-3285; *Bigler v. Personal Serv. Ins. Co.*, 7th Dist. Belmont No. 12 BE 10, 2014-Ohio-1467.

{¶ 101} Husband's ninth assignment of error is overruled.

{¶ 102} Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

S. POWELL , P.J., and HENDRICKSON, J., concur.